Filed 3/16/22  Hernandez v. SFM, LLC CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JULIO HERNANDEZ et al., | D077547 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2016-00015169-CU-OE-CTL) |
| SFM, LLC, | |
| Defendant and Respondent; | |
| IVAN VASQUEZ, | |
| Movant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

The Markham Law Firm, David R. Markham, Maggie K. Realin and Lisa R. Brevard for Plaintiffs and Appellants.

CDF Labor Law, Amy S. Williams and Ashley Halberda for Defendant and Respondent.

Capstone Law, Ryan H. Wu, Liana Carter and Eduardo Santos for Movant and Appellant.

I.

INTRODUCTION

Ivan Vasquez appeals from a judgment entered after defendant SFM, LLC (SFM), the parent company of Sprouts Farmers' Markets grocery stores, and plaintiffs Julio Hernandez, Carmen Valenzuela and Jeffrey Wasik (the *Hernandez* Plaintiffs) settled a case involving numerous PAGA and class action claims brought on behalf of all nonexempt California employees for violations of the Labor Code (the *Hernandez* action) for a total of $1,200,000.[1] Under the terms of the settlement in the *Hernandez* action, the parties allocated $300,000 of the total settlement amount to the PAGA claims, and allocated the remaining $900,000 to the class claims.

In proceedings in the trial court, the parties to the *Hernandez* action filed bifurcated motions seeking the court's approval of the settlement of the PAGA claims and the class claims. The parties first sought court approval of the $300,000 allocated to address the PAGA claims and obtained the requisite approval from the court for that portion of the settlement before

---

[1]    Two days prior to the scheduled oral argument in this case, a separate set of appealing parties—Kelly Munoz, Taylor Woodworth, and Marissa Torres (the Munoz Representatives)—indicated to this court that they had settled the matter with the Hernandez plaintiffs and SFM, and sought to dismiss their appeal. Upon receiving a formal notice of settlement and request for dismissal, this court dismissed the Munoz Representatives' appeal. Because the Munoz Representatives' actions in the underlying litigation are relevant to an understanding of what occurred in the proceedings in the trial court, we include references to the Munoz Representatives, as well as to their participation in the trial court proceedings, in our description of the events in the trial court that led to this appeal.

seeking and obtaining court approval of the $900,000 allocated to settle the class claims.

While the *Hernandez* action was pending in the trial court, the Munoz Representatives and Vasquez each filed separate actions against SFM in different California trial court forums, alleging PAGA claims that overlap with some or all of the claims covered by the settlement entered by the parties in the *Hernandez* action. Specifically, the Munoz Representatives alleged a single PAGA claim based on a theory of liability stemming from the failure to provide suitable seating to cashiers, while Vasquez alleged a number of PAGA claims based on a variety of theories of liability, including those alleged in the *Hernandez* action, as well as several additional theories.

After the trial court in the *Hernandez* action approved the portion of the settlement allocated to the PAGA claims, both the Munoz Representatives and Vasquez moved to intervene in the *Hernandez* action. The court granted the Munoz Representatives' motion to intervene but denied Vasquez's motion.

The Munoz Representatives filed a motion to set aside the court's approval of the PAGA settlement in the *Hernandez* action. The trial court denied the motion. The court concluded that the $300,000 allocated to settle the PAGA claims in the *Hernandez* action, "reached after years of litigation and multiple mediation efforts[,] was fundamentally fair, adequate, and reasonable in light of PAGA's policies and procedures, particularly in the setting of a companion $900,000 class action settlement and a consideration of the relative weaknesses and strengths of the case."

After the trial court approved the class action portion of the settlement in the *Hernandez* action and entered a final judgment, Vasquez moved to vacate the judgment pursuant to Code of Civil Procedure section 663. The

3

trial court denied the motion to vacate on procedural grounds and also rejected the motion on its merits.

Both the Munoz Representatives and Vasquez appealed from the judgment. As previously mentioned, the Munoz Representatives subsequently dismissed their appeal.

Vasquez first argues that the trial court erred in denying his motion to intervene because, he contends, his motion was timely and he is entitled to both mandatory and permissive intervention. Second, Vasquez argues that the court erred in denying his motion to vacate the judgment; Vasquez alleges various errors related to the trial court's decision to approve the settlement agreement as to both the class claims and the PAGA claims in the *Hernandez* action. We conclude that even if we were to assume that Vasquez's motion to intervene was timely with respect to mandatory intervention, he has failed to demonstrate that the court erred in denying mandatory intervention. With respect to permissive intervention, Vasquez has not demonstrated that the trial court abused its discretion in denying his request to intervene. Finally, we conclude that Vasquez has demonstrated no basis for reversing the trial court's approval of the settlement or the court's denial of his motion to vacate the judgment.

We therefore affirm the judgment.

## II.

## BACKGROUND

### A. *The* Hernandez *action*

Plaintiffs Hernandez and Valenzuela provided notice of their PAGA allegations to the California Labor and Workforce Development Agency

4

(LWDA) on March 31, 2016.[2]  On May 6, 2016, Hernandez and Valenzuela filed their complaint alleging PAGA claims on behalf of all nonexempt employees of SFM in California based on alleged violations of Labor Code sections 512 (failure to provide meal periods and rest breaks), 226 and 226.7 (failure to provide accurate wage statements and meal break premiums for late meal breaks), and 2802 (failure to reimburse business expenses).  That same day, Hernandez and Valenzuela amended their PAGA notice to allege violations of Labor Code sections 201–203, for the failure to timely pay wages upon termination.  Hernandez and Valenzuela thereafter filed a first amended complaint to add these predicate violations, and later filed a second amended complaint to correct SFM's name.

B.  *The Munoz Representatives file a PAGA claim based on failure to provide suitable seating*

On May 22, 2018, approximately two years after the *Hernandez* action was filed, the Munoz Representatives filed a complaint against SFM in the Los Angeles County Superior Court, alleging a single PAGA claim on behalf of SFM checkers or cashiers, based on a theory of liability arising from an alleged failure to provide seating for those employees, as required by Industrial Welfare Commission (IWC) Wage Order 7-2001 section 14 (the *Munoz* action).

C.  *Vasquez files his PAGA action raising the claims asserted in the* Hernandez *action, as well as additional PAGA claims*

Vasquez filed a complaint on March 27, 2019, three years after the *Hernandez* action was filed, and one year after the Munoz Representatives

---

[2]    As we explain further, plaintiff Wasik was added as a party later in the litigation.  We will refer to counsel for Hernandez and Valenzuela, and later Wasik, as Plaintiffs' counsel.

filed their action (the *Vasquez* action). In his complaint, Vasquez asserted all of the claims alleged in the *Hernandez* action (i.e., failure to provide meal and rest breaks, unreimbursed expenses, inaccurate wage statements and untimely paid wages at termination), and also brought additional claims for failure to pay minimum and overtime wages, split-shift and reporting time violations, unlawful deduction from wages, failure to timely pay wages during employment, failure to provide personal protective equipment, and failure to provide notice of material terms of employment. In mid-December 2019, Vasquez filed an amended complaint adding a claim for failure to provide suitable seating—the same claim alleged in the Munoz Representatives' complaint.

D.  *Discovery and motion practice in the* Hernandez *action*

Hernandez and Valenzuela engaged in litigation against SFM for several years. The parties litigated a motion for judgment on the pleadings, various discovery motions, a motion to determine the applicable statute of limitations, and a motion to amend the complaint. The parties also engaged in extensive written discovery and conducted multiple depositions.

Among the discovery propounded by Hernandez and Valenzuela and responded to by SFM were Special Interrogatories and Requests for Production of Documents. SFM produced more than 15,000 pages of documents and data, including timekeeping, overtime records, meal and rest break records, "reporting pay" records, split shift premium records, expense reimbursement records, corporate policies, including SFM's suitable seating policy, as well as contact information and time and pay records for hundreds of California nonexempt SFM employees. Hernandez and Valenzuela responded to written discovery requests and sat for depositions.

6

During the course of the litigation, Plaintiffs' counsel contacted "dozens or hundreds" of California nonexempt employees and obtained signed declarations from them. According to counsel, interviews with these employees demonstrated that California nonexempt employees "were typically able to take rest breaks" and did not complain about not being paid for all hours worked, split shift premiums or reporting time pay. Interviewed employees stated that it was rare to work split shifts or to be called off work; leaving work before one's shift ended was on a voluntary basis.

Plaintiffs' counsel engaged an expert who reviewed the time and pay records of hundreds of California nonexempt employees. Based on the expert's analysis, Plaintiffs' counsel determined that there were approximately 256,737 workweeks (and thus pay periods) for which there was a potential meal break violation and as to which a meal premium had not been paid; however, as of approximately June 7, 2017, there was evidence that SFM was paying meal break premiums, which coincided with the time when SFM implemented a new timekeeping system. The records also demonstrated that overtime, split shift premiums and reporting time wages were paid appropriately.

E.  *The mediations and settlement agreement in the* Hernandez *action*

On August 14, 2018, after two years of litigation, the parties in the *Hernandez* action participated in their first mediation before an experienced mediator. The 2018 mediation did not result in a settlement and the parties continued to litigate.

Approximately one year later, the *Hernandez* parties participated in a second mediation before a different experienced mediator. At the 2019 mediation, the parties reached a settlement in principle; they executed a Memorandum of Understanding at the conclusion of the mediation. The

7

Memorandum of Understanding included the filing of a third amended complaint to add Jeffrey Wasik as a named plaintiff and to include class allegations and additional PAGA claims. The proposed settlement would include the release of the PAGA and class claims alleged in the third amended complaint in exchange for a nonreversionary settlement of $1.2 million dollars, $900,000 of which would be allocated to settlement of the class claims and $300,000 of which would be allocated to settlement of the PAGA claims.

F. *The parties engage in confirmatory discovery and negotiate and finalize the terms of the settlement agreement*

Following the 2019 mediation, the parties in the *Hernandez* action engaged in confirmatory discovery with respect to the claims that were added in the third amended complaint to verify that the amounts proposed to settle those claims were supported by the underlying facts. The parties also continued to negotiate the terms of the settlement agreement. SFM produced to Plaintiffs' counsel an "Ergonomic Assessment Report," prepared by a Certified Professional Ergonomist, on July 13, 2016. The report was based on an on-site analysis of three California Sprouts locations that had been deemed representative of all other Sprouts retail stores. The report was also based on interviews with 24 Sprouts employees. The expert determined that the nature of the work did not reasonably permit the use of seating for the cashiers, with the exception of the possibility for use in the dedicated express lanes and for the receiving manager's position.

SFM also provided the seating policy that it issued in November 2016, in which it adopted recommendations from the ergonomic report, thereby providing seating for employees in express lanes and receivers upon request.

8

G. *Approval of the PAGA claims settlement*

On September 27, 2019, the *Hernandez* parties appeared at a status conference; on that date, they informed the trial court that they had reached a settlement that would encompass both PAGA and class claims, but indicated that it was their intention to bifurcate the court's approval process for those two aspects of the settlement. The parties requested permission to seek approval of the PAGA claims settlement only, on an ex parte basis, and the court agreed to this procedure.

Also on September 27, 2019, Jeffrey Wasik provided an amended PAGA notice to the LWDA and SFM; this notice included the PAGA claims that were to be added in the anticipated third amended complaint, including one for failure to provide suitable seating to cashiers and clerks.

The *Hernandez* parties continued to negotiate the terms of the full settlement for another month. Between November 2 and November 5, 2019, they executed a document setting forth the terms of the settlement of the PAGA claims.

After having executed the PAGA portion of the settlement, on November 7, 2019, the *Hernandez* parties filed a document titled "Stipulation for Leave to File the Third Amended Complaint and for Court Approval of PAGA Settlement." That same day, Hernandez and Valenzuela notified the LWDA of the terms of the PAGA claims settlement and provided the LWDA with a copy of the settlement agreement document that the parties had executed.

On November 8, 2019, Hernandez and Valenzuela filed an ex parte application for approval of the "Stipulation for Leave to File the Third Amended Complaint and for Court Approval of PAGA Settlement." The proposed third amended complaint sought to add eight new PAGA violations,

including a suitable seating claim, as well as class claims, and proposed to add Wasik as a named representative plaintiff in the action.[3] The proposed third amended complaint alleged that Wasik had stopped working at Sprouts in "mid-2016."

The *Hernandez* parties appeared before the trial court for a hearing on November 13, 2019. At this hearing, the trial court approved the stipulation of the parties to file the third amended complaint. The court also approved the settlement of the PAGA claims. The court entered an order that stated, "The PAGA Settlement Agreement attached hereto as Exhibit 1 is APPROVED as fair, adequate and reasonable and is entered as an Order of the Court."[4]

On November 20, 2019, the settlement funds from the PAGA settlement were distributed to the LWDA and to the aggrieved employees. The LWDA deposited the settlement check in the amount of $130,000.

---

[3] The newly-proposed claims included allegations of failure to timely pay minimum, regular and overtime wages pursuant to Labor Code sections 204, 510, 558, 1182.12, 1194, 1197, 1197.1, and 1198; failure to provide suitable seating pursuant to Labor Code section 1198 and Wage Order 7; unlawful deduction of wages under Labor Code sections 221 and 224; failure to pay split-shift premiums under Labor Code section 1198 and Wage Order 7; failure to provide personal protective equipment under Labor Code sections 6401 and 6403; failure to provide notice of material terms of employment under Labor Code section 2810.5; and failure to pay reporting time pay under Labor Code section 1198 and Wage Order 7. Thus, the claims in the proposed third amended complaint included those raised in the *Vasquez* action and the suitable seating claim that was the subject of the *Munoz* action.

[4] On November 19, 2019, the *Hernandez* parties appeared at a subsequent ex parte hearing in order to correct an error in the settlement agreement. That day, the trial court signed the corrected order, nunc pro tunc to November 13, 2019.

H.  *The Munoz Representatives and Vasquez learn of the settlement of the* Hernandez *action*

As the *Hernandez* action was proceeding in a San Diego County court, the Munoz Representatives were litigating the *Munoz* action in a Los Angeles County court.  A trial in that case was set for late December 2019.  In preparation for that trial, the Munoz Representatives had engaged an ergonomics expert, and the parties had taken various depositions, exchanged documents, and filed motions in limine.

SFM did not inform the Munoz Representatives that it had secured a settlement agreement in the *Hernandez* action, including a suitable seating claim, or that it had sought approval of the settlement from the court in the *Hernandez* action until November 19, 2019.[5]  On that date, SFM filed an ex parte notice and application to vacate the trial in the *Munoz* action based on the settlement of the suitable seating claim in the *Hernandez* action.

On November 21, 2019, SFM provided Vasquez with a copy of the court's order in the *Hernandez* action granting approval of the settlement of the PAGA claims.

On November 22, 2019, the Munoz Representatives filed an ex parte application in the *Hernandez* action to stay enforcement of the PAGA claims settlement and to shorten time to hear a motion for leave to intervene and a motion to set aside the settlement of the PAGA claims.  The Munoz Representatives' proposed complaint in intervention alleged a "representative action on behalf of all other[s] similarly situated and of the State of California's Labor & Workforce Development Agency as a representative

---

[5]     SFM filed a notice of related cases in the *Munoz* action, in which it identified the *Hernandez action* as a related case on November 15, 2019, two days after the court had approved the PAGA claims settlement in the *Hernandez action*.

action for recovery of civil penalties pursuant to [PAGA]" based on SFM's alleged failure to provide "checkers and/or cashiers with seats as required by [IWC Wage Order 72001] section 14."

After an ex parte hearing held on November 25, 2019, the trial court granted the Munoz Representatives leave to intervene and set a hearing on the motion to set aside the PAGA portion of the settlement.

On November 27, 2019, Vasquez asserted in a joint status report filed in the *Vasquez* action that the recently approved PAGA claims settlement in the *Hernandez* action was "woefully deficient and improper," that "Defendants have attempted to settle claims for which the *Hernandez* plaintiffs do not have standing to pursue," and that he was aware that the Munoz Representatives' motion to set aside the approval of that settlement was set for a hearing on January 17, 2020. Vasquez indicated in the joint status report that he also intended to move to intervene and seek to set aside the settlement of the PAGA claims in the *Hernandez* action.

I.  *The Munoz Representatives' motion to set aside the PAGA claim settlement*

On January 16, 2020, the *Hernandez* Plaintiffs, SFM, the Munoz Representatives, and Vasquez appeared at an ex parte hearing that had been set for Vasquez's motion for leave to intervene.[6] At that hearing, the trial court denied Vasquez's motion and also indicated that its tentative ruling was to deny the Munoz Representatives' motion to set aside the PAGA claims settlement.

---

6  We will provide additional background regarding Vasquez's motion for leave to intervene and the court's ruling with respect to that motion in the following section.

The *Hernandez* Plaintiffs, SFM and the Munoz Representatives appeared for a hearing on the motion to set aside the settlement of the PAGA claims the following day, January 17, 2020.  In reiterating its tentative ruling to deny the motion, the trial court noted that there was no statutory requirement that the parties litigating PAGA claims notify parties in other pending cases that involve overlapping PAGA claims that a settlement of those claims is being contemplated.

The trial court also noted that the LWDA had been put on notice about the potential release of all of the PAGA claims alleged in the third amended complaint in the *Hernandez* action and had not registered any objection to the settlement.  In addition, the trial court considered the Munoz Representatives' arguments regarding Wasik's standing to bring and settle the PAGA claims, as well as the value of the suitable seating PAGA claim, and ultimately rejected these arguments.

The trial court issued a Minute Order confirming its tentative ruling denying the Munoz Representatives' motion to set aside the settlement of the PAGA claims.  The court's order states:

> "An employee suing under PAGA does so as the proxy or agent of the state's labor law enforcement agencies.  PAGA claims belong to the state of California, not individual employees. *Arias v. Superior Court* (2009) 46 Cal.4th 969, 986.  While Sprouts' last-minute amendment to the complaint to include seating claims and thereafter obtaining ex parte settlement approval without providing notice to the law firm representing the *Munoz* case plaintiffs certainly raises eyebrows, neither side has cited any legal authority that requires an employer settling a PAGA action to place attorneys handling the same PAGA claims in a different action on notice before obtaining court approval.  Evidently, this is a courtesy not legally required.

13

"Here, the LWDA had been given notice of the settlement on November 7, 2019, and now, a date more than two months later, has never objected to this settlement, and, in fact, has cashed the $130,000 settlement money received from Sprouts. The court finds that the LWDA's non-objection to the settlement and subsequent cashing of the settlement check are tantamount to having consented to the settlement. *Jordan v. NCI Group, Inc.* (2018) WL 1409590, at *3 (C.D. Cal. Jan. 5, 2018) ('[T]he court finds it persuasive that the LWDA was permitted to file a response to the proposed settlement and no comment or objection has been received. The court infers LWDA's non-response is tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount').

"The court finds that the $300,000 PAGA settlement reached after years of litigation and multiple mediation efforts was fundamentally fair, adequate and reasonable in light of PAGA's policies and procedures, particularly in the setting of a companion $900,000 class action settlement and a consideration of the relative weaknesses and strengths of the case. The *Hernandez* plaintiffs' settlement with Sprouts was a settlement between Sprouts and the State of California, which was on notice of all PAGA actions against Sprouts, including the *Munoz* case.

"Furthermore, that (1) Jeffrey Wasik had not been employed by Sprouts since 2016 or 2018 and (2) Wasik's status to encompass seating claims of aggrieved employees dating back one year before Wasik's LWDA letter of September 27, 2019, would not cover claims all the way back to April 3, 2015, if alleged by Sprouts, are irrelevant here since Sprouts, like any defendant, is free to waive the statute of limitations affirmative defense, as Sprouts, in effect, did in settling claims for which there may otherwise have been a viable statute of limitations defense. Furthermore, PAGA claims can be released even where the complaint does not include a PAGA cause of action. *Villacres v. ABM Industries, Inc.* (2010) [189] Cal.App.4th 562, 587.

14

"Intervenor Munoz plaintiffs' motion to set aside the
$300,000 PAGA settlement is denied." (Some formatting
omitted.)

J. *Vasquez's motion for leave to intervene*

On January 14, 2020, just under two months after becoming aware of the settlement of overlapping PAGA claims in the *Hernandez* action, Vasquez filed an ex parte application for leave to intervene in the *Hernandez* action. Vasquez sought intervention "so that he may have standing to move to set aside the Court's order approving the Parties' PAGA Settlement, and to participate in the hearing scheduled for January 17, 2020." In his moving papers, Vasquez contended that the settlement of the PAGA claims was collusive and undervalued.

On January 16, 2020, the trial court denied Vasquez's ex parte application for leave to intervene as untimely. The hearing was not reported; a Settled Statement reflects the following regarding what transpired at the hearing:

> "The Court noted that Vasquez sought to intervene so that he would have standing to move to set aside the Court's order approving the PAGA Settlement and to participate in the hearing on Munoz's Motion to Set Aside the PAGA Settlement, however, Vasquez knew about the PAGA settlement as early as November 21, 2019, but did not move to intervene until January 16, 2020, the day before the Munoz hearing. The Court stated that the motion to intervene was untimely.

> "The Court also noted that, having reviewed Intervenor Munoz's Motion to Set Aside the PAGA Settlement, there was no authority requiring a PAGA representative plaintiff or Defendant employer to give notice of a PAGA settlement to other PAGA representative plaintiffs with a pending PAGA claim against the same employer, and the Court's tentative ruling was to deny the Munoz Motion to Set Aside the PAGA Settlement. Counsel for Vasquez argued that

15

Vasquez did not know Defendant would attempt to preclude Vasquez's PAGA claim based on the PAGA settlement in this case until December, when Defendant refused discovery in his action. Vasquez also argued that the decision in *Brown v. Ralphs Grocery Co.*[ (2011) 197 Cal.App.4th 489], precluded Plaintiffs from settling out additional PAGA claims not originally named in the complaint. Vasquez stated that the employment of the named Plaintiffs in Hernandez ended in 2016, but they sent additional PAGA notices in 2019 attempting to include additional claims for the sole purpose of settling those claims from other appointed PAGA representatives who were pursuing litigation of those claims. Vasquez argued that, under *Brown*, Plaintiffs lacked standing to bring the additional claims not alleged in the original PAGA letters— as the statute of limitations had expired on those claims by the time the amended PAGA notice was sent in 2019—and therefore those claims cannot be resolved by the PAGA settlement in this action.

"The Court responded that the statute of limitations is a defense that Defendant may waive, and that Defendant waived it here when it agreed to the settlement. . . .

"The Court adopted its tentative ruling and denied the motion on grounds of timeliness."

On May 26, 2020, Vasquez filed a notice of appeal from the trial court's order denying his motion for leave to intervene.

K. *The motion for preliminary approval of the settlement of the class claims*

In the meantime, as of December 20, 2019, the *Hernandez* Plaintiffs and SFM executed a settlement agreement with respect to the pending class claims, which would require that SFM pay $900,000 for the release of those claims on behalf of the approximately 41,000 current and former nonexempt hourly employees who worked for SFM in California between April 3, 2015 and the date preliminary approval of the settlement was obtained. That day,

16

the *Hernandez* Plaintiffs submitted a motion for preliminary approval of the proposed class action settlement.

In moving for preliminary approval of the class claims, the *Hernandez* Plaintiffs explained that the settlement amount of $900,000 derived principally from meal break violations, which they viewed as their strongest claim against SFM.[7]

The *Hernandez* Plaintiffs attached a nominal settlement value to the rest break, unpaid time and expense reimbursement claims, explaining that discovery and interviews with class members had revealed few violations.[8]

---

[7] An expert retained by the *Hernandez* Plaintiffs analyzed a 10% sample of employee time records for incidents of late meal breaks and compared them with employee pay records to determine the level of violations and whether premiums had been paid for these violations. During the class period, there were more than 2,300,000 workweeks; 1,092,500 of those workweeks occurred between April 3, 2015 and June 7, 2017, when SFM changed its timekeeping system and began paying meal break premiums. The expert's analysis of a sample of time and pay records for California clerks demonstrated that approximately 23.5% of the workweeks up to June 7, 2017 (or 256,737 workweeks) had a potential meal break violation for which a meal premium was not paid. Based on an average hourly rate for class members during the class period of $12.18, SFM's maximum potential liability for a meal break claim was estimated to be $3,127,062. Thus, the $900,000 class settlement represented approximately 28.78% of Sprouts' maximum potential liability for the meal break claim.

[8] Interviews with employees demonstrated that they were typically able to take rest breaks, and they were not required to purchase cleaning supplies to perform their job duties; if they did have to purchase supplies, SFM had a procedure in place for obtaining reimbursement. Regarding the unlawful wage deduction claim for uniforms, the *Hernandez* Plaintiffs noted that discovery had revealed that Sprouts provided employees with one item with a Sprouts' logo free of charge, and employees were charged only if they desired to purchase more logo items, which was not required. Further, class members had registered few or no complaints that they had not been paid for

17

The *Hernandez* Plaintiffs further noted that "most (if not all) employees [had] signed arbitration agreements with a class action waiver."[9]

On January 17, 2020, the trial court granted preliminary approval of the proposed settlement of the class claims.

L. *Vasquez objects to the settlement of the class claims*

On June 2020, Vasquez filed an objection to the class settlement and argued that "Plaintiffs have padded the TAC with as many Labor Code violations as possible so as to give Defendant the broadest possible release of all claims for wages, overtime, premiums, and penalties, and to provide Defendant with the means of extinguishing other related litigation, such as Mr. Vasquez's action and the action filed by Plaintiff-Intervenors Kelly Munoz." The Munoz Representatives joined in Vasquez's objection to the class settlement.

In objecting to the class settlement, Vasquez raised five arguments: (1) the proposed settlement requires class members to release claims that were not litigated, for hardly any value; (2) the *Hernandez* Plaintiffs failed to

---

all hours worked, at the correct rates, for reporting to work, and for split shifts. The review of Plaintiffs' wage statements as compared to their time records showed that Plaintiffs were accurately paid for all hours worked. In addition, Sprouts' policies forbid off-the-clock work. As to derivative wage statement and waiting time penalty claims, the *Hernandez* Plaintiffs noted that recent cases had held that such penalties are not triggered by meal and rest break claims.

9    There is some discrepancy between the time period for the class claims and the date on which the record shows SFM implemented an "electronic onboarding system," through which all new employee candidates were required to "complete and/or sign all onboarding form," which included SFM's Arbitration Agreement. That "electronic onboarding system" was utilized by SFM beginning in June 2016, while the class claims reached back to April 2015.

18

meet their burden of establishing the fairness of the proposed settlement;
(3) the proposed settlement is not entitled to a presumption of fairness;
(4) the proposed settlement is the product of collusion; and (5) the
preservation of individual claims in the release is an illusory benefit.

M.  *The trial court rejects the objections to the class settlement and enters a*
*final judgment*

Following the final fairness hearing, the trial court entered a document
on July 21, 2020 titled "FINAL JUDGMENT AND ORDER APPROVING
CLASS ACTION SETTLEMENT." In this document, the trial court
overruled the objections to the proposed settlement of the class claims and
granted final approval, stating:

> "The Court has considered all relevant factors for
> determining the fairness of the settlement and has
> concluded that all such factors weigh in favor of granting
> final approval. In particular, the Court finds that the
> settlement was reached following meaningful discovery and
> investigation conducted by Plaintiffs' counsel; that the
> settlement is the result of serious, informed, adversarial
> and arm's length negotiations between the parties; and
> that the terms of the settlement are in all respect fair,
> adequate, and reasonable.
>
> "In so finding, the Court has considered all evidence
> presented, including evidence regarding the strength of the
> Plaintiffs' case; the risk, expense, and complexity of the
> claims presented; the likely duration of further litigation;
> the amount offered in settlement; the extent of
> investigation and discovery completed; and the experience
> and views of Plaintiffs' counsel."[10]

---

[10]    At the final fairness hearing, the trial court stated, "This was a long --
very acrimonious [case] in the beginning, and I believe it was well worked up
by both sides, so I'm pleased with the result."

N.  *Vasquez moves to vacate the judgment*

On August 5, 2020, Vasquez moved to vacate the judgment pursuant to Code of Civil Procedure section 663, contending that the trial court's judgment was entered "without a sufficient basis to 'satisfy itself that the class settlement is within the ballpark of reasonableness.' "

After hearing from the parties, the trial court denied the motion to vacate the judgment, stating:

> "Vasquez brings this motion pursuant to Code of Civil Procedure section 663.
>
> "This motion may 'only be brought when the trial judge draws an incorrect legal conclusion or renders an erroneous judgment upon the facts found by it to exist.' (*Garibotti v. Hinkle* (2015) 243 Cal.App.4th 470, 476–477.) Furthermore, the moving party must propose 'another and different judgment [to be] entered' that is supported by the underlying factual findings. (Code Civ. Proc., § 663.) However, with respect to motions for approval of a stipulated settlement, the underlying facts in this case were not adjudicated and determined before the Court or a jury. (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 2 Cal.App.4th 1, 14.) Thus, the motion fails on procedural grounds.
>
> "Nevertheless, the Court's findings of no collusion as well as the fairness and adequacy of the settlement in the final approval ruling were well supported. (Minute Order dated 7/17/20, p. 2.)
>
> "Finally, Vasquez lacks standing to vacate Plaintiffs' separate PAGA settlement. The PAGA statute does not provide a mechanism for an aggrieved employee to object or contest a PAGA settlement. (*Sakkab v. Luxottica Retail N. Am., Inc.* (9th Cir. 2015) 803 F.3d 425, 435; see also *Starks v. Vortex, Inc.*, 2020 DJAR 9393 (filed August 25, 2020 (PAGA settlement not objected to by LWDA may not be attacked post-judgment where the LWDA accepted the proceeds from the judgment).)"

20

On September 24, 2020, Vasquez appealed the trial court's postjudgment order denying his motion to vacate the judgment.

O. *Additional proceedings on appeal*

Various parties filed a total of four separate requests for judicial notice in this court, seeking notice of multiple documents in each request. Two of these requests have become moot because they were filed by the Munoz Representatives, who subsequently dismissed their appeal.

III.

DISCUSSION

A. *The parties' requests for judicial notice*

On April 8, 2021, Vasquez filed a request for judicial notice, asking this court to take judicial notice of three documents: (1) the Declaration of Michael Smith, an employee of the LWDA, "filed in *Rachel Moniz v. Adecco USA, Inc.,* Case No. 17CIV01736 (San Mateo Superior Court of California, March 5, 2020)"; (2) an amicus curiae brief filed by the Division of Labor Standards Enforcement in "Support of Reversal of Final Judgment, filed in *Brandon Harvey v. Morgan Stanley Smith Barney LLC*, No. 20-15510 (9th Cir. Sept. 22, 2020); and (3) a request for partial depublication made by the LWDA in "*Starks v. Vortex Industries, Inc. & Herrera v. Vortez Industries, Inc.*, Second Appellate District, Division One, Case Nos. B288005, B292643 (October 26, 2020)."

Respondent SFM filed its own request for judicial notice on August 19, 2021, seeking judicial notice of four documents: (1) "*Chavez v. Saticoy Lemon Ass'n* (Ventura County Superior Court Aug. 10, 2015) 2015 WL 5561118, Joint Stipulation Requesting Approval of Representative Action Settlement; (Proposed) Order Thereon"; (2) "*Clavel v. Lupe's Thousand Oaks Mexican*

21

*Restaurant, Inc.* (Ventura County Superior Court Mar. 25, 2016) 2016 WL 1601221, Joint Stipulation Requesting Approval of Representative Action Settlement; (Proposed) Order Thereon"; (3) "*Guillen v. DSC Logistics, Inc. et al.* (Los Angeles Superior Court Oct. 18, 2016) 2016 WL 11004286, Supplemental Brief In Support Of Motion For Approval"; and (4) "*Amaro v. Anaheim, Arena Management, LLC* (4th Dist. Ct. Appl., Jan. 11, 2021) 2021 WL 208165, Respondent's Brief."[11]

We deny the requests for judicial notice. The positions taken and arguments made by attorneys, parties, and others in unrelated cases are based on the particular facts underlying those cases. The parties have not convinced us that the events in these unrelated legal proceedings have anything more than possible marginal relevance to the issues before us in this case. (See, e.g., *Gonzalez v. City National Bank* (2019) 36 Cal.App.5th 734, 760, fn. 13 [declining to take judicial notice of letters issued by the State Department of Health Care Services because the materials "have, at best, marginal relevance to the issues before" the court].)

B. *The merits of Vasquez's appeal*

    1. *The trial court did not err in denying Vasquez's motion to intervene*

Vasquez's first contention on appeal is that the trial court erred in denying as untimely his application for leave to intervene in the *Hernandez* action. Vasquez argues that it was improper for the court to conclude that his application for leave to intervene was untimely, and that he was otherwise entitled to intervene under both the mandatory *and* permissive intervention rules.

---

11    Vasquez filed an opposition to SFM's request for judicial notice, but takes issue with only the fourth document, i.e., the Respondent's Brief in the *Amaro v. Anaheim Arena Management, LLC* matter.

22

Code of Civil Procedure section 387 governs nonparty intervention into an action, and provides for either mandatory intervention (subd. (d)(1)), or permissive intervention (subd. (d)(2)).[12]  Any application for leave to intervene must be made in a "timely" manner.  (See Code Civ. Proc., § 387, subd. (d)(1), (d)(2).)  " 'The purpose of allowing intervention is to promote fairness by involving all parties potentially affected by a judgment.' " (*Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1504.)

a. *Legal standards*

i. *Mandatory intervention*

A nonparty has a right to mandatory intervention where "[t]he person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties."  (Code Civ. Proc., § 387, subd. (d)(1).)  Unlike permissive intervention, in evaluating whether mandatory intervention applies, courts do not consider whether intervention would expand the issues in the case, create delay, or adversely affect the

---

[12]    Code of Civil Procedure "section 387 was modeled after and is 'virtually identical' to rule 24 of the Federal Rules of Civil Procedure."  (*Ziani Homeowners Assn. v. Brookfield Ziani LLC* (2015) 243 Cal.App.4th 274, 280–281 (*Ziani*); see *Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1423 (*Siena Court*) [Code of Civil Procedure section 387, subdivision (d)(1) " 'is in substance the exact counterpart to rule 24(a) of the Federal Rules of Civil Procedure' "].)  Thus, "[i]n assessing [the] requirements" for intervention, "we . . . take guidance from federal law." (*Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 732 (*Edwards*).)

original parties.  (*California Physicians' Service v. Superior Court* (1980) 102 Cal.App.3d 91, 96.)

The standard of review applicable to the denial of an application for leave to intervene as a matter of right is not settled.  (See *Edwards, supra*, 29 Cal.App.5th at p. 732.)  Although some appellate courts have implicitly applied the de novo standard of review (see, e.g., *Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 548–550; *Mylan Laboratories Inc. v. Soon-Shiong* (1999) 76 Cal.App.4th 71, 78–80), others have applied an abuse of discretion standard.  (See *Siena Court, supra*, 164 Cal.App.4th at p. 1425.)

### ii.   *Permissive intervention*

Permissive intervention under Code of Civil Procedure section 387, subdivision (d)(2) is available, even if mandatory intervention is not, when a would-be intervenor meets four criteria:  "(1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action."  (*Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386 (*Reliance*).)  "The permissive intervention statute balances the interests of others who will be affected by the judgment against the interests of the original parties in pursuing their litigation unburdened by others."  (*City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030, 1036.)

It is well-settled that a trial court's denial of an application for permissive intervention is reviewed for an abuse of discretion.  (*Reliance, supra*, 84 Cal.App.4th at p. 386; *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 345.)

24

### iii.  *Timeliness*

"Timeliness is measured from 'the date the proposed interveners knew or should have known their interests in the litigation were not being adequately represented.' " (*Lofton v. Wells Fargo Home Mortgage* (2018) 27 Cal.App.5th 1001, 1013 (*Lofton*), quoting *Ziani, supra*, 243 Cal.App.4th at p. 282.)

Under both California and federal cases, a "determination of the timeliness of intervention" is reviewed "for an abuse of discretion."  (*Lofton, supra*, 27 Cal.App.5th at p. 1012; see *Smith v. L.A. Unified Sch. Dist.* (9th Cir. 2016) 830 F.3d 843, 853 (*Smith*) ["timeliness determination is reviewed for abuse of discretion"].)  However, when mandatory intervention "is sought, because 'the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.' " (*Lopez-Aguilar v. Marion County Sheriff's Dept.* (7th Cir. 2019) 924 F.3d 375, 388–389; see *Benjamin v. Dept. of Pub. Welfare of Pa.* (3d Cir. 2012) 701 F.3d at p. 949 ["There is a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene"].)

### b.  *Application*

#### i.  *Vasquez did not meet the standards for mandatory intervention*

Vasquez argues that his application for intervention was timely because he filed it within 60 days of becoming aware of the existence of the settlement of the PAGA claims in the *Hernandez* action on November 21, 2019.  He further argues that the date from which the trial court should have

25

measured the timeliness of his application for leave to intervene is December 20, 2019, which is when, he contends, he "conclusively discovered that his interests were impaired."

Even if we were to assume that the trial court improperly rejected Vasquez's application for leave to intervene under the mandatory intervention provisions of Code of Civil Procedure 387 on timeliness grounds, Vasquez still cannot demonstrate reversible error with respect to the court's denial of his application. Specifically, Vasquez cannot demonstrate that his interests were not adequately represented by the *Hernandez* Plaintiffs in pursuing the same PAGA penalties that Vasquez was pursuing.[13]

---

[13] The parties dispute whether Vasquez meets the threshold inquiry for eligibility for mandatory intervention—i.e., whether he has an interest relating to the property or transaction that is the subject of the *Hernandez* action. (See *Siena Court, supra*, 164 Cal.App.4th at p. 1423 ["the threshold question is whether the person seeking intervention has 'an interest relating to the *property* [or] *transaction* which is the subject of the action' "].) Although a recent appellate decision has concluded that a plaintiff who is pursuing overlapping PAGA claims in a separate case does not have a *personal* interest in the PAGA claims, and that this precludes that individual from having a right to mandatory intervention, the Supreme Court has granted review in that case. (See *Turrieta v. Lyft, Inc.* (2021) 69 Cal.App.5th 955, 977 (*Turrieta*), review granted Jan. 5, 2022 No. S271721 [holding that plaintiff in separate PAGA action has no personal interest in the PAGA claims, and thereby has no "entitlement to mandatory or permissive intervention"].) The question posed in the Supreme Court's grant of review in *Turrieta* indicates that the Court intends to address this very question: "Does a plaintiff in a representative action filed under the Private Attorneys General Act (Lab. Code, § 2698, et seq.) (PAGA) have the right to intervene, or object to or move to vacate, a judgment in a related action that purports to settle the claims that plaintiff has brought on behalf of the State?" (*Turrieta*, review granted Jan. 5, 2022, No. S271721.)

We may assume for purposes of this appeal that Vasquez has an interest adequate to entitle him to mandatory intervention if the other requirements were met, because, as we explain, we conclude that even if

26

" '[W]here an applicant for intervention and an existing party "have the same *ultimate objective*, a presumption of adequacy of representation arises." ' [Citation.]" (*League of United Latin Am. Citizens v. Wilson* (9th Cir. 1997) 131 F.3d 1297, 1305.) Courts are reluctant to give the intervenor equal status when a proposed intervenor merely disagrees with litigation strategy or legal tactics, and not with any substance. (*Id.* at p. 1306.) Thus, at heart the question of adequacy of representation for purposes of mandatory intervention is not whether the proposed intervenor would obtain a better result than the plaintiff in the case in representing the interests of the state, but rather, whether the plaintiff is *adequately* representing those interests. (Code Civ. Proc., § 387, subd. (d)(1)(B).)

Because Vasquez and the *Hernandez* Plaintiffs both represent the interest of the state labor agencies to ensure compliance with labor laws, their interests are identical. Where an applicant's interest is identical to that of one of the parties, a *compelling* showing is required to demonstrate inadequate representation. (*Perry v. Proposition 8 Official Proponents* (9th Cir. 2009) 587 F.3d 947, 951.) Vasquez has made no such compelling showing. Vasquez's sole contention as to why his interests are not adequately represented by the *Hernandez* Plaintiffs is that none of the *Hernandez* plaintiffs has "standing" to bring the claims alleged in the third amended complaint, given the dates during which the plaintiffs were employed by SFM and the filing of the third amended complaint on the 60th day after notice was provided to the LWDA, rather than the 65th day. However, as we explain later in this opinion, we reject these arguments as a

Vasquez's personal interest is sufficient for intervention, he cannot demonstrate that the *Hernandez* Plaintiffs have not adequately represented his interest.

27

basis for reversing the judgment. We therefore also reject Vasquez's contention that the *Hernandez* Plaintiffs are unable to adequately represent the state and Vasquez's parallel interests.[14] Vasquez therefore cannot demonstrate that the trial court's denial of his application for leave to intervene under the mandatory intervention provisions of Code of Civil Procedure section 387 requires reversal.

---

[14] During oral argument, counsel for Vasquez suggested that *Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56 (*Moniz*), supports his position that his interests are insufficiently represented by the *Hernandez* plaintiffs, such that he is entitled to mandatory intervention. We disagree. *Moniz, supra*, 72 Cal.App.5th 56 did not address questions of intervention because, as that opinion made clear, there had been a previous appeal in that case in which the appellate court *affirmed* the trial court's *denial* of a motion to intervene. In setting forth the background of the case, the *Moniz* court explained that, in the prior appeal, the court had affirmed the denial of the motion for mandatory intervention on the same grounds on which we affirm the denial of mandatory intervention in this case:

> "While the *Doe* appeal was pending, Correa sought to intervene in *Moniz*. [Fn. omitted.] She argued that she was entitled to mandatory intervention because she had an interest relating to the property or transaction at issue, because the eventual disposition in *Moniz* could impair her ability to protect that interest, and because Moniz did not adequately represent that interest. The trial court denied Correa's motion on timeliness grounds and because she did not meet the requirements for mandatory or permissive intervention. *This court affirmed the trial court's denial order, holding that Correa had not established she was entitled to mandatory intervention because she did not establish the inadequacy of Moniz's representation.* (*Moniz v. Adecco USA, Inc.* (Feb. 11, 2020, A155474) [nonpub. opn.] (*Moniz I*).) We also affirmed the denial of her request for permissive intervention because the trial court did not abuse its discretion in finding that the interests opposing intervention outweighed Correa's alleged interest in the action." (*Id.* at p. 66, italics altered.)

ii. *The trial court did not abuse its discretion in determining that Vasquez's application was untimely for purposes of permissive intervention*

With respect to Vasquez's request for permissive intervention, we conclude that the trial court did not err in its assessment that the request was untimely. Although courts are reluctant to deny mandatory intervention on the ground that the request to intervene was not timely made, the same circumspection is not required in assessing a trial court's ruling regarding the timeliness of an application for permissive intervention. (See *Crestwood Behavioral Health, Inc. v. Lacy* (2021) 70 Cal.App.5th 560, 574 [citing federal cases for proposition that while a denial on timeliness grounds of a request for mandatory intervention might constitute an abuse of discretion, a denial of a request for permissive intervention on the same grounds might not be an abuse of discretion]; see also, *Lopez-Aguilar v. Marion County Sheriff's Dept.* (7th Cir. 2019) 924 F.3d 375, 388–389 [when mandatory intervention "is sought, because 'the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, *even though they might deny the request if the intervention were merely permissive*' " (italics added)]; see also *Benjamin v. Dept. of Public Welfare of Pa.* (3d Cir. 2012) 701 F.3d 938, 949 ["There is a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor may be seriously harmed if not allowed to intervene"].)

Under the circumstances in this case, we conclude that the trial court did not abuse its discretion in determining that Vasquez waited too long to pursue permissive intervention. Again, for purposes of intervention, "[t]imeliness is measured from the date the proposed interveners knew or should have known their interests in the litigation were not being adequately

29

represented." (*Lofton, supra*, 27 Cal.App.5th at p. 1013.) Vasquez was provided a copy of the PAGA settlement in the *Hernandez* action on November 21, 2019. Six days later, on November 27, 2019, Vasquez informed the trial court in his own case in Ventura County that he believed that the settlement of the PAGA claims in the *Hernandez* action was "woefully deficient and improper," that "Defendants have attempted to settle claims for which the *Hernandez* plaintiffs do not have standing to pursue," that he was aware that Munoz et al.'s motion to set aside the PAGA settlement was set for hearing on January 17, 2020, and that he also intended to move to intervene and set aside the PAGA settlement. Also included in the joint case status report was SFM's position that the settlement of the PAGA claims in the *Hernandez* action rendered further litigation in Vasquez's case futile. Thus, as of November 27, 2019, Vasquez was aware that SFM was taking the position that the settlement in the *Hernandez* action would result in the dismissal of his case, and he stated concerns that the plaintiffs in the *Hernandez* action were not "adequately" (*ibid.*) representing his interests.

Despite having this information at least as of late November 2019, and also being aware of the fact that the *Hernandez* action was in the final stages of settlement approval, Vasquez did not move to intervene until January 14, 2020, which was a mere three days before the Munoz Representatives' motion to set aside the approval of the PAGA claims settlement was set to be heard. On January 14, rather than file a full noticed motion application, Vasquez filed an ex parte application for leave to intervene in attempt to have his request heard before the motion to set aside the approval of the PAGA claims settlement.

Given these circumstances, the trial court acted reasonably in concluding that, to the extent Vasquez was seeking permissive intervention

30

in the *Hernandez* action, the application was not made in a timely manner. We see no basis for reversing the order.

2. *The trial court did not abuse its discretion in approving the class action settlement*

Vasquez next contends that the trial court "failed to exercise proper discretion in approving the [class action] settlement" (boldface and capitalization omitted).[15] He contends that "the record is woefully underdeveloped," arguing that the *Hernandez* Plaintiffs "eschew[ed] any valuation, including the maximum amount that they could have achieved had they prevailed at trial," and therefore "deprived the trial court of information essential to evaluating whether the settlement can be approved." Vasquez further argues that the court "failed to properly evaluate whether the claims alleged in the TAC could have been settled by the Parties, not having sufficient information to render any judgment as to the Class Settlement's fairness as to those claims." Among other asserted errors, Vasquez contends that the trial court abused its discretion in "finding a presumption of fairness" existed in this case under the authority of *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801–1802 (*Dunk*). Finally, Vasquez asserts that the trial court abused its discretion in "ignoring the subtle signs of collusion that merited closer scrutiny" (boldface and capitalization omitted).

---

15    An individual has standing to challenge a class settlement on appeal where that party has become a party of record in the trial, which may occur through formal intervention or by filing a motion to vacate the judgment. (*Hernandez v. Restoration Hardware* (2018) 4 Cal.5th 260, 273 (*Hernandez*).) Although the trial court denied Vasquez's application for leave to intervene, and we have affirmed the court's ruling as to the denial of that application, Vasquez also moved to vacate the judgment. By doing so, Vasquez became a party of record in the *Hernandez* action. We therefore consider his challenge to the court's approval of the settlement of the class claims.

Vasquez argues that the fact that SFM's employees will receive "an average payment of nearly $9 to release claims spanning five years" suggests that the class settlement is infirm.

In the class action context, a trial court must consider whether a proposed settlement is fair, adequate, and reasonable.  (*Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1118 (*Cellphone Cases*).)  A court considers the substance of the proposed settlement in order to avoid fraud, collusion, or unfairness to the class.  (*Id.* at p. 1117.)  In addition, because a court acts as the guardian of the rights of absentee class members, a court is to conduct an "independent assessment of the adequacy of the settlement terms," which requires that the court have sufficient data and information about the amount in controversy and the realistic range of outcomes.  (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129, 132.)  In conducting this analysis, a court considers a variety of factors, including whether the settlement is negotiated at arm's length, whether there is sufficient discovery and information to permit the parties and the court to act intelligently, whether the attorneys have experience with the type of issues involved, and whether the number of objectors is small.  (*Dunk, supra*, 48 Cal.App.4th at pp. 1800–1801.)

A trial court's determination that a class action settlement is fair, adequate, and reasonable under the above standards is reviewed for an abuse of discretion.  (*Cellphone Cases, supra*, 180 Cal.App.4th at p. 1118.)  " 'To merit reversal, . . . an abuse of discretion by the trial court must be "clear" and the demonstration of [that abuse of discretion] on appeal must be "strong." ' "  (*Cho v. Seagate Technology Holdings, Inc.* (2009) 177 Cal.App.4th 734, 743.)

Vasquez contends that the parties failed to provide the court with sufficient information to permit the court to assess the reasonableness, adequacy and fairness of the class settlement. We disagree. The parties in the *Hernandez* action provided the court with sufficient information from which it could conclude that the settlement was completed at arm's length, and from which it could assess the reasonableness and fairness of the proposed settlement.

The record discloses that SFM produced 15,000 pages of documents during discovery, and that counsel for the *Hernandez* Plaintiffs interviewed hundreds of class members regarding all of the claims alleged in the third amended complaint. These interviews demonstrated that a representative group of hundreds of employees had no complaints about an inability to obtain suitable seating, and also had no complaints regarding being required to work off-the-clock or not being paid reporting time or split-shift premiums.

In addition to these interviews, the *Hernandez* Plaintiffs received in discovery contact information for 10 percent of SFM's California clerks, as well as a 10 percent sample of time and pay records. Counsel retained an expert to analyze the time and pay data obtained during discovery. The expert analyzed employee time records and compared them with employee pay records. This analysis provided a basis for understanding the potential value of any pay and time-related claims being raised.

With respect to the suitable seating claims, as noted, the record showed that SFM instituted a suitable seating policy as of April 29, 2013; the plaintiffs' review of the policy demonstrated that it complied with Wage Order No. 7. The *Hernandez* Plaintiffs also reviewed an Ergonomic Assessment Report that was prepared by a certified professional ergonomist on July 13, 2016. The expert's report detailed that generally, the nature of

33

the work of cashiers would not reasonably permit the use of seating for them, with the exception of those working in dedicated express lanes or in the receiving manager's position. The record shows that in response to this report, as of November 1, 2016, SFM revised its seating policy to improve it and to adopt the expert's recommendations.

In addition, the *Hernandez* Plaintiffs detailed how they arrived at an assigned value for each of the meal and rest break claims, unreimbursed expense and uniform deduction claims, unpaid time and overtime claims, split-shift and reporting time claims, derivative wage statement and untimely wage claims, and failure to provide material terms of employment claims. These valuations were supported by citations to the discovery and expert reports. As noted, for example, after discovery and expert analysis of the time and pay records, the *Hernandez* Plaintiffs assigned the highest value to the meal break claims. This determination was based on the data that the *Hernandez* Plaintiffs obtained during discovery. They determined that approximately 256,737 workweeks/pay periods had a potential meal break violation for which a meal premium was not paid. However, they also determined that as of approximately June 7, 2017, there is evidence in the time and pay records that meal break premiums were being paid; this timing coincided with SFM's implementation of a new time keeping system. The *Hernandez* Plaintiffs determined from these figures that the class settlement proposal represented just under 28.8 percent of SFM's maximum potential liability for the meal break claim. The *Hernandez* Plaintiffs also considered that recent appellate cases had held that time records showing possible meal break violations, alone, was not sufficient to create a presumption of violations because the records do not demonstrate whether the meal break may have been waived voluntarily, and that the holdings in these cases

34

impacted the value of the meal break claim. Considering this, as well as the fact that the meal break policy at issue appeared to be "facially lawful," the *Hernandez* Plaintiffs deemed it appropriate to discount the value of any meal break violation claim.

Further, while the *Hernandez* Plaintiffs assigned little or no value to some of the claims, they provided a legal and factual analysis for each valuation. For example, the *Hernandez* Plaintiffs determined that claims for the failure to provide material terms of employment are not claims for which the law permits recovery by an employee; assigning no value to this claim was supported by legal authority demonstrating that the claim had no real value.

Vasquez nevertheless argues that there were "subtle signs of collusion that merited closer scrutiny" (boldface and capitalization omitted), and suggests that because the class claims were settled prior to certification of a class, closer scrutiny was warranted. We disagree with his assessment. First, the parties participated in two separate mediations, each of which involved the guidance of an experienced, neutral mediator. Only after the second mediation were the parties able to reach agreement. This fact supports the trial court's conclusion that the settlement was reached after arm's length negotiations, and was not the product of collusion between the parties. More important, absent SFM's *agreement* to treat some portion of the claims as class claims for purposes of settling the matter, virtually none of the aggrieved employees who became class members pursuant to this settlement would have been entitled to the notice and opt-out provisions that came with class treatment—and they would not have been entitled to any class-wide payment; the vast majority of the affected employees, if not all of them, had signed arbitration agreements that included a class action waiver.

35

Thus, the value of any class claims was, potentially, *zero*. However, as the parties explained, SFM's agreement to effectively waive its class claims arbitration defense and allocate $900,000 to the newly-added class claims, permitted aggrieved employees to recover more than they would have if the entire settlement amount had been paid out as PAGA penalties; in that event, the aggrieved employees would have been entitled to only 25 percent of the total settlement sum remaining after attorney fees were allocated.

Further, although Vasquez does not mention the standards associated with the phrase "subtle signs of collusion," that phrase has been used by federal courts to describe certain specific factors that a court should be mindful of when parties reach a settlement in a class action:

> "The 'subtle signs' of collusion for which we require district courts to look include, for example:
>
> "(1) 'when counsel receive a disproportionate distribution of the settlement;' (2) 'when the parties negotiate a "clear sailing" arrangement' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant." (*Roes v. SFBSC Mgmt., LLC* (9th Cir. 2019) 944 F.3d 1035, 1049.)

None of these factors is present here, and Vasquez does not suggest otherwise.

Finally, only 33 of thousands of class members opted out of the settlement, which further demonstrates the reasonableness of the class action settlement; this overwhelmingly favorable response to the settlement provides additional support for its approval. (See *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 411.)

In sum, we conclude that Vasquez has not demonstrated that the trial court's approval of the class portion of the settlement was anything other

36

than the product of a reasoned exercise of discretion. (See *In re Microsoft I–V Cases* (2006) 135 Cal.App.4th 706, 723.)

3. *Vasquez has not demonstrated error with respect to the trial court's denial of his motion to vacate the judgment*

In his final argument on appeal, Vasquez contends that the trial court erred in not vacating the judgment pursuant to Code of Civil Procedure section 663, as Vasquez requested.[16] Vasquez argues that the trial court erred in denying his motion to vacate "on procedural grounds." The court concluded that a motion to vacate under Code of Civil Procedure section 663 may not be applied to attempt to vacate a judgment entered through a stipulated settlement, because the "underlying facts in [such a case are] not adjudicated and determined before the Court or a jury." Vasquez argues that the trial court was incorrect in concluding that a motion to vacate made pursuant to Code of Civil Procedure section 663 may not be used to challenge a judgment entered pursuant to a stipulated settlement.

---

[16] Code of Civil Procedure section 663 provides:

"A judgment or decree, when based upon a decision by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment:

"(1) Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected

"(2) A judgment or decree not consistent with or not supported by the special verdict."

We need not decide whether Vasquez is correct with respect to the trial court's determination that Code of Civil Procedure section 663 may not be used to vacate a judgment that is the product of a settlement because the court determined that Vasquez's motion to vacate should be denied on its merits, as well: "Nevertheless, the Court's findings of no collusion as well as the fairness and adequacy of the settlement in the final approval ruling were well supported." This basis for the trial court's denial of the motion to vacate is supported by the record.

First, as we previously discussed, the trial court's conclusion that the settlement of the class claims met the applicable standards for approval of a class settlement is supported by the record.

In addition, to the extent that Vasquez is challenging the trial court's approval of the PAGA claims settlement, we reject that challenge.[17] Vasquez

_____

[17] There remains a question as to whether a PAGA plaintiff such as Vasquez, who has brought overlapping PAGA claims in a separate lawsuit, has a right to challenge the settlement of those same claims in a different action (compare *Turrieta, supra*, 69 Cal.App.5th at pp. 967–968, review granted Jan. 5, 2022, S271721 [PAGA representative in one action does not have standing to move to vacate or appeal a judgment following settlement of another PAGA action with overlapping PAGA claims], with *Moniz, supra*, 72 Cal.App.5th 56 [disagreeing with *Turrieta's* conclusion and holding that status as a PAGA plaintiff in one action is sufficient to confer right to challenge allegedly unfair settlement in another PAGA action with overlapping claims]). Unlike the judgments at issue in both *Turrieta* and *Moniz,* which involved PAGA claims only, the judgment in this case resolves both PAGA *and* class claims. Vasquez undeniably has standing to bring a motion to vacate a judgment that resolved the class claims (see *Hernandez, supra*, 4 Cal.5th at pp. 272–274), and his filing of the motion to vacate the judgment ensured that he had the right to appeal the denial of that motion (see *ibid.*). Further, even though the settlements were approved through a bifurcated approval process, the trial court relied in part on the fact that there was a pending $900,000 settlement of the class claims in concluding that the $300,000 PAGA settlement was adequate and reasonable. Thus, the

has two main contentions as to why the court should not have approved the PAGA settlement. Vasquez argues that the trial court mistakenly concluded that the *Hernandez* Plaintiffs had standing to settle the claims, arguing that the *Hernandez* Plaintiffs were "not deputized for the newly added claims because their 2019 PAGA letter was invalid." According to Vasquez, there are two separate reasons why the *Hernandez* Plaintiffs lacked standing. First, he argues that because the newly-added plaintiff, Wasik, never worked for Sprouts within the statute of limitations he cannot be considered an aggrieved employee who has the right to bring PAGA claims. Second, he contends that because Wasik did not wait 65 days after providing notice to the LWDA before filing the third amended complaint, which added the additional PAGA claims that had not previously been asserted and about which Wasik's letter provided notice to the LWDA, Wasik lacked authority to settle the state's claims. In addition to challenging the *Hernandez* Plaintiffs' standing to settle the PAGA claims, Vasquez also challenges the adequacy of the settlement itself, asserting that "the trial court quickly approved the

PAGA settlement was intertwined with the class settlement, rendering the two portions of the judgment interdependent and nonseverable. Even a partial appeal from a nonseverable judgment will typically bring the entire judgment before a reviewing court. (See, e.g., *Gonzales v. R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 805 [where a judgment has parts that are not severable, an appeal from a "portion of the judgment brings up for review not only the portion appealed from but [also] those other portions which are found to be 'interdependent upon' it"]; *American Enterprise, Inc. v. Van Winkle* (1952) 39 Cal.2d 210, 217–218 ["[I]n California, such an appeal [taken from a portion of a judgment that cannot be separated from the remainder of the judgment] brings before the reviewing court all of the nonseverable portions"].) Given that Vasquez has appealed from a nonseverable judgment, we address the merits of Vasquez's contention that the judgment should have been vacated because the trial court abused its discretion in approving all aspects of the settlement of the claims in the operative complaint, including the PAGA claims.

39

PAGA Settlement on November 13, 2019," even though the settling parties "failed to demonstrate that the PAGA Settlement was fair and reasonable or provide any evidence in support" in their "bare-bones seven-page stipulation."

We begin with a brief discussion of PAGA in order to provide the context necessary to many of the issues that Vasquez raises in this portion of his appeal. Before the Legislature enacted PAGA, only the state could sue for civil penalties. (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 80 (*Kim*).) Enforcement by the government was problematic because prosecutors devoted their time to other priorities. (*Id.* at p. 81.) In order to address the lack of sufficient enforcement of the state's labor laws, in 2003, the Legislature enacted PAGA and "declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980 (*Arias*).)

PAGA provides a process by which employees who have suffered a Labor Code violation or violations of IWC wage order provisions may bring an action on behalf of the state; through PAGA, an aggrieved employee may be deputized to bring a representative lawsuit on behalf of the state to enforce the labor laws that are being violated. (*Kim, supra*, 9 Cal.5th at p. 81; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 386 (*Iskanian*).) Although an aggrieved employee is the named plaintiff in a PAGA action, PAGA disputes are, at heart, disputes between the state and

40

the employer.  (*Iskanian*, at p. 386; *Arias, supra*, 46 Cal.4th at p. 986 [plaintiff represents same legal rights and interests as state labor law enforcement agencies].)

Before an aggrieved employee may file a PAGA lawsuit on behalf of the state, the employee must file a notice with the LWDA and notify the employer of the specific violations and theories underlying the claims.  (Labor Code, § 2699.3, subd. (a)(1)(A).)  This notice provides the LWDA with an opportunity to investigate the alleged violations, should it choose to do so.  (*Kim, supra*, 9 Cal.5th at p. 81.)  Once the procedural prerequisites of the notification are met, the aggrieved employee is authorized to bring a PAGA action to enforce labor laws.  (See Labor Code, § 2699.3, subd. (a)(1); *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 375.)

If a PAGA plaintiff is successful in the action, 75 percent of the penalties recovered goes to the LWDA and 25 percent of the recovery is distributed to the aggrieved employees.  (Labor Code, § 2699, subd. (i); *Arias, supra*, 46 Cal.4th at pp. 980–981.)

PAGA actions asserting overlapping claims may be brought by different employees who allege the same violations and rely on the same theories.  (*Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 866–867.)  However, once a PAGA claim is resolved to finality by a particular PAGA plaintiff and judgment has been entered, the government and all nonparty aggrieved employees are bound by that judgment.  (*Ibid.*; see *Iskanian, supra*, 59 Cal.4th at p. 386 [aggrieved employees bound by judgment in PAGA action].)

41

*The* Hernandez *Plaintiffs had standing to settle the PAGA claims*

To the extent that Vasquez argues that the *Hernandez* Plaintiffs lacked standing to settle the PAGA claims identified in the third amended complaint because the newly-added plaintiff, Wasik, did not work for Sprouts within one year of his PAGA notice and was therefore "barred . . . from asserting news claims [in] September . . . 2019," we disagree.

Labor Code section 2699, subdivision (c) sets forth the standing requirements for bringing a PAGA claim. (See *Kim, supra*, 9 Cal.5th at pp. 83–84.) That provision states that "[f]or purposes of [PAGA], 'aggrieved employee' means any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (Lab. Code, § 2699, subd. (c).) As *Kim* explains, "The plain language of [Labor Code] section 2699[, subdivision] (c) has only two requirements for PAGA standing. The plaintiff must be an aggrieved employee, that is, someone 'who was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed.' " (*Kim*, at pp. 83–84.) Under this definition, all of the *Hernandez* Plaintiffs meet the standing requirements for bringing the PAGA claims alleged.

Vasquez's argument suggests that the statute of limitations applicable to PAGA claims, which limits PAGA penalties to those that occurred in the one year preceding the plaintiff's PAGA notice (see *Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824, 839 [establishing one-year limitations period for PAGA claims]), should be read into the standing requirements. However, there is nothing in the statutory language that would lead us to interpret the definition of "aggrieved employee" in Labor Code section 2699, subdivision (c) in that manner. Although the Legislature could have placed a temporal limit

on an employee's standing by limiting standing to employees "against whom one or more of the alleged violations was committed" (Lab. Code, § 2699, subd. (c)) *within the preceding year*, no such temporal limit is included in the definition of "aggrieved employee" (*ibid.*). Rather, the only temporal limit placed on PAGA actions is that imposed by the statute of limitations, which operates to limit the time frame for which PAGA penalties may be assessed. (See Code Civ. Proc., § 340, subd. (a); see also *Brown, supra*, 28 Cal.App.5th at p. 839.)

However, a defendant may waive the statute of limitations defense and agree to pay penalties for a period of time greater than the statute of limitations would otherwise allow. (See *Amaro v. Anaheim Arena Management, LLC* (2021) 69 Cal.App.5th 521, 541–542 (*Amaro*).) As the *Amaro* court explained, " 'In civil cases, the statute of limitations is not jurisdictional but merely serves a procedural function and constitutes an affirmative defense that is waived unless pleaded and proved.' [Citations.] If the Legislature had intended to make the limitations period for PAGA jurisdictional rather than an affirmative defense, it would have said so. [Citation.] Since it did not, we must presume the general rule applies. As such, it was within [the defendant's] discretion to waive its statute of limitations defense so [the plaintiff] could release class members' PAGA claims dating back [beyond the one-year limitation period]." (*Amaro*, at pp. 541–542.) As the trial court noted, SFM agreed to waive its statute of limitations defense, and expressly agreed to provide recovery to aggrieved employees for violations reaching back to April 3, 2015. This was permissible, and there is nothing that otherwise limits the time period for which the *Hernandez* Plaintiffs were authorized to release their PAGA claims in the settlement with SFM.

43

Because the requirements for standing to bring a PAGA claim do not include a temporal element, and the only temporal limitation on pursuit of a PAGA claim is that provided by the statute of limitations, the fact that none of the *Hernandez* Plaintiffs were employed by SFM during the one-year limitation period does not mean that they lack standing to bring and settle the PAGA claims asserted in their action. We therefore reject the contention that the trial court should not have approved the settlement of the PAGA claims because the *Hernandez* Plaintiffs did not work for SFM during the one-year statute of limitations period.

Vasquez also contends that the *Hernandez* Plaintiffs lack standing to pursue their PAGA claims because they failed to fully satisfy the PAGA administrative requirements with respect to providing notice to the LWDA. Wasik's notice letter to the LWDA was sent on September 27, 2019. Wasik signed the PAGA claims portion of the settlement on November, 1, 2019, the third amended complaint was filed on November 8, and the court granted approval of the PAGA claims settlement on November 13, 2019.

According to Vasquez, the *Hernandez* Plaintiffs were not deputized to pursue the claims asserted in their third PAGA letter, which were added in the third amended complaint, until December 1, 2019, which was after the third amended complaint was filed.

Vasquez argues that because the *Hernandez* Plaintiffs did not wait the full 65-day waiting period after providing notice to the LWDA as outlined in Labor Code section 2699.3, they "did not have standing to prosecute or settle those claims as of November 13, 2019."

Labor Code section 2699.3 provides a framework of notice requirements that an aggrieved employee is to fulfill prior to bringing a PAGA claim action. The statute provides, in pertinent part:

44

"(a) A civil action by an aggrieved employee pursuant to subdivision (a) or (f) of Section 2699 alleging a violation of any provision listed in Section 2699.5 shall commence only after the following requirements have been met:

"(1)(A) The aggrieved employee or representative shall give written notice by online filing with the Labor and Workforce Development Agency and by certified mail to the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation.

"(B) A notice filed with the Labor and Workforce Development Agency pursuant to subparagraph (A) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75). The fees required by this subparagraph are subject to waiver in accordance with the requirements of Sections 68632 and 68633 of the Government Code.

"(C) The fees paid pursuant to subparagraph (B) shall be paid into the Labor and Workforce Development Fund and used for the purposes specified in subdivision (j) of Section 2699.

"(2)(A) The agency shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation within 60 calendar days of the postmark date of the notice received pursuant to paragraph (1). Upon receipt of that notice or if no notice is provided within 65 calendar days of the postmark date of the notice given pursuant to paragraph (1), the aggrieved employee may commence a civil action pursuant to Section 2699.

"(B) If the agency intends to investigate the alleged violation, it shall notify the employer and the aggrieved employee or representative by certified mail of its decision within 65 calendar days of the postmark date of the notice received pursuant to paragraph (1). Within 120 calendar days of that decision, the agency may investigate the alleged violation and issue any appropriate citation. . . .

45

> If the agency determines that no citation will be issued, it shall notify the employer and aggrieved employee of that decision within five business days thereof by certified mail. Upon receipt of that notice or if no citation is issued by the agency within the time limits prescribed by subparagraph (A) and this subparagraph or if the agency fails to provide timely or any notification, the aggrieved employee may commence a civil action pursuant to Section 2699." (Lab. Code, §2699.3.)

As the Supreme Court has explained, the "evident purpose of the notice requirement is to afford the relevant state agency, the Labor and Workforce Development Agency, the opportunity to decide whether to allocate scarce resources to an investigation, a decision better made with knowledge of the allegations an aggrieved employee is making and any basis for those allegations. Notice to the employer serves the purpose of allowing the employer to submit a response to the agency (see Lab. Code, § 2699.3, subd. (a)(1)(B)), again thereby promoting an informed agency decision as to whether to allocate resources toward an investigation." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 545–546 (*Williams*).) As a federal district court explained, " 'PAGA notice must be specific enough such that the LWDA and the defendant can glean the underlying factual basis for the alleged violations.' [Citation.] Conversely, 'a string of legal conclusions with no factual allegations or theories of liability to support them . . . is insufficient to allow the [LWDA] to intelligently assess the seriousness of the alleged violations.' [Citations.] Plaintiff, however, need not set forth 'every potential fact or every future theory.' [Citations.] 'Under California's Labor Code, a written notice is sufficient so long as it contains some basic facts about the violations, such as which provision was allegedly violated and who was allegedly harmed.' " (*Stevens v. Datascan Field Services LLC* (E.D.Cal., Feb. 17, 2016, No. 2:15-cv-00839-TLN-AC) 2016 U.S. Dist. Lexis 19289.)

46

SFM and the *Hernandez* Plaintiffs note that some courts have interpreted these prefiling requirements as administrative remedies that must be exhausted prior to filing suit; as such, respondents argue, they constitute merely a procedural prerequisite to filing suit, the failure of which may be waived by a defendant. (See *Gunther v. Alaska Airlines, Inc.* (2021) 72 Cal.App.5th 334 [holding that notice was sufficient, and noting that "no California court has addressed whether forfeiture applies to a PAGA claim," although many federal district courts have, and determining that "[e]ven were [the court] to assume that [plaintiff] provided defective notice [under Labor Code section 2699.3], [defendant] forfeited the exhaustion argument by not raising it at trial because this is an affirmative defense subject to waiver"]; see also *Gomez v. J. Jacobs Farm Labor Contractor, Inc.* (E.D.Cal. 2019) 334 F.R.D. 234, 272; *Batson v. United Parcel Service, Inc.* (S.D.Cal., Sept. 27, 2012, No. 12cv0839 BTM (JMA)) 2012 U.S. Dist. Lexis 139567 ["failure to exhaust administrative remedies under the PAGA is an affirmative defense subject to waiver" if not pled]; *In re Taco Bell Wage and Hour Actions* (E.D.Cal., Apr. 8, 2016, No. 1:07-CV-01314-SAB) 2016 U.S. Dist. Lexis 48557 [failure to move for dismissal of PAGA claim based on failure to exhaust waived the defense].)

Although these authorities may be correct in holding that, to the extent a failure to comply with the notice requirements of Labor Code section 2699.3 could prejudice a defendant, the notice requirements applicable to the defendant may be waived by a defendant, the defendant is not the only entity on whose behalf the notice requirements of Labor Code section 2699.3, subdivision (a) were enacted. For this reason, we question whether these requirements may be unilaterally waived by a defendant in a PAGA action. As the *Williams* court explained, the notice provisions exist in order to

47

provide the LWDA an "opportunity to decide whether to allocate scarce resources" toward investigating the violations asserted. (*Williams, supra*, 3 Cal.5th at p. 545.) A plaintiff's failure to satisfy the requisite notice procedures with respect to the LWDA could undermine the very purpose of the notice provisions by depriving the LWDA of the opportunity to act in its authorized role as the state's enforcement agency for investigating and addressing Labor Code violations. It is therefore not clear that a defendant should be permitted to waive the state's interest in ensuring compliance with the notice provisions related to the LWDA.

The court in at least one recent case has concluded that a plaintiff's failure to comply with the notice requirements of Labor Code section 2699.3, subd. (a) with respect to a newly-asserted PAGA claim, as those requirements pertain to the LWDA, rendered that plaintiff unable to pursue and settle the claim for which the notice requirements had not been met. (See *Uribe v. Crown Building Maintenance Co.* (2021) 70 Cal.App.5th 986, 1004–1005 (*Uribe*).) In *Uribe*, an intervenor in the action had appealed a judgment confirming final approval of a class action and PAGA claims settlement reached between the plaintiff and the defendant. (*Uribe, supra*, at p. 989.) One of the intervenor's arguments on appeal was that the plaintiff's PAGA notice "was deficient in that it failed to state or even mention unreimbursed use of employees' personal cell phones as a basis for his PAGA claim." (*Id.* at pp. 1002–1003.) The *Uribe* court agreed, noting that although the plaintiff had provided notice of his allegation that the defendant had violated the Labor Code " 'by failing to reimburse Employee for Expenses incurred for purchasing slip resistant shoes and maintaining his uniform,' " (italics omitted) the plaintiff had not provided notice that he was also alleging that the defendant failed to reimburse employees for cell phone use because his

48

PAGA notice was "devoid of any facts or theories relative to" the cell phone reimbursement claim. (*Id.* at p. 1005.)

The *Uribe* court concluded: "In omitting entirely any facts or theories as to cell phone use, Uribe's PAGA notice was deficient on that score; it was therefore inadequate to furnish grounds for Uribe to sue on that basis." (*Uribe, supra,* 70 Cal.App.5th at p. 1005.) Further, the court determined that reversal of the settlement was required, stating: "*Having no basis to sue on that ground,* any settlement Uribe reached with Crown could not include settlement of PAGA claims for unreimbursed cell phone costs, and the trial court could not enter judgment confirming such a settlement." (*Ibid.,* italics added.)

The plaintiff in *Uribe* had not provided the LWDA with any notice of the alleged cell phone violation that he attempted to settle along with other claims as to which he had provided notice, which left him lacking authority under PAGA to settle that claim. That is not what occurred here. In this case, Wasik did provide notice to the LWDA of all of the claims that were ultimately settled; Wasik's only failure was in not waiting the full statutorily-prescribed period before asserting those claims in the *Hernandez* action through the filing of the third amended complaint. This failure is fundamentally different from the failure to provide any notice at all to the LWDA of a claim that the plaintiff is attempting to settle, as in *Uribe*. In this case, the LWDA was afforded an opportunity to act on the notice provided by Wasik. Even though Wasik and the other plaintiffs filed the third amended complaint before the 65-day statutory had elapsed, those claims were still subject to the LWDA taking action on them during the 65-day period. Wasik's filing of the third amended complaint could have had no effect on the LWDA's ability to investigate the alleged violations if it had determined to do

49

so; if the LWDA had indicated that it intended to investigate the violations and issue a citation, and Wasik had received such notification within the 65-day waiting period, his claims would have been subject to dismissal. (See Lab. Code, § 2699, subd. (h) ["*No action may be brought under this section by an aggrieved employee* if the agency or any of its departments, divisions, commissions, boards, agencies, or employees, on the same facts and theories, cites a person within the timeframes set forth in Section 2699.3 for a violation of the same section or sections of the Labor Code under which the aggrieved employee is attempting to recover a civil penalty on behalf of himself or herself or others or initiates a proceeding pursuant to Section 98.3" (italics added)].)

The record demonstrates that the LWDA did not at any time indicate that it intended to investigate the claims for which Wasik provided notice on September 27, 2019. By the time final judgment was entered in the *Hernandez* action—more than six months after the 65-day waiting period had elapsed—the LWDA had been provided more than the statutorily required time within which to take over the investigation of the alleged violations that were the subject of Wasik's notice to the LWDA. It did not do so.

Further, it is clear that the LWDA was fully notified of all of the violations alleged in the third amended complaint long before September 27, 2019, the date of Wasik's letter. Specifically, the LWDA was notified of all of these alleged violations pursuant to a January 17, 2019 letter sent by Vasquez—eight months prior to the date that Wasik sent his notification letter, and the record discloses that Vasquez filed his complaint and pursued these same claims, with no indication from the LWDA that it had any intention of asserting its own authority to investigate these alleged violations. Thus, prior to the time that Wasik sent his notice letter, the

50

LWDA had already yielded its authority to pursue these same violations on behalf of the aggrieved employees. Any failure on Wasik's part to wait to file a complaint asserting claims for those violations until the full statutory 65-day period had elapsed could not have prejudiced the LWDA.

We therefore conclude that, unlike the notice failure in *Uribe*, which involved the complete lack of any notice of the claim that the plaintiff purported to settle and as to which judgment was entered, a failure in a plaintiff's timing with respect to the notice requirements, such as the premature filing of the claims at issue in this case, may be cured if the full 65-day period elapses without the LWDA acting during that time, as long as the 65-day time period elapses prior to entry of any judgment that purports to bind the LWDA and all aggrieved employees. Given that this is what occurred here, we reject Vasquez's contention that none of the *Hernandez* Plaintiffs had the authority to settle all of the PAGA claims alleged in the third amended complaint.

b. *The trial court did not abuse its discretion in approving the PAGA claims settlement*

Vasquez's final challenge to the judgment is that the trial court erred in not vacating the PAGA claims settlement, arguing that the settling parties failed to demonstrate that the PAGA claims settlement was fair and reasonable, and failed to "provide any evidence in support" of the settlement.

We disagree with Vasquez's assessment of the record regarding the information that was presented to the trial court, and we conclude that no abuse of the court's discretion has been shown with respect to the court's approval of the settlement of the PAGA claims; therefore, the court could not have erred in denying Vasquez's motion to vacate the judgment on the ground that the PAGA settlement was deficient.

51

As an initial matter, we address the question of the standard that a trial court is to apply in reviewing the proposed settlement of PAGA claims. As the court in *Moniz, supra*, 72 Cal.App.5th at p. 75, recently noted, "[a]side from the requirement that the court 'review and approve' a settlement in a civil action filed under PAGA (§ 2699, subd. (l)(2)), PAGA itself does not provide a standard for this review and approval in . . . PAGA cases. [Citation.]" Further, prior to the opinion in *Moniz*, "neither the Legislature, nor any published California authority has provided a definitive answer to this question." (*Ibid.*)

The *Moniz* court set out to fill this vacuum, adopting the rule that it believed most appropriate with respect to judicial review of a PAGA settlement:

> "We . . . hold that a trial court should evaluate a PAGA settlement to determine whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws. (See *Williams, supra*, 3 Cal.5th at p. 546 [PAGA 'sought to remediate present violations and deter future ones']; *Arias, supra*, 46 Cal.4th at p. 980 [the declared purpose of PAGA was to augment state enforcement efforts to achieve maximum compliance with labor laws].)" (*Moniz, supra*, 72 Cal.App.5th at p. 77.)

We agree with the *Moniz* court that this standard for review of a PAGA claims settlement is appropriate, and we adopt this as the standard to be applied by a trial court assessing a PAGA settlement. As in *Moniz* (see *Moniz, supra*, 72 Cal.App.5th at p. 77), the trial court in this matter applied the appropriate standard in its review of the PAGA claims settlement.

We also take guidance from the *Moniz* court's consideration of the appropriate standard for appellate review of a trial court's approval of a settlement of PAGA claims. *Moniz* explained, "There is also no established

52

appellate standard of review for a PAGA settlement, but the parties agree that this court should apply an abuse of discretion standard. Given the lack of express statutory standard or criteria for approving PAGA settlements, and the obvious discretion a trial court must exercise in determining the settlement's fairness, we find this standard to be appropriate on appeal from a judgment entered pursuant to the settlement of PAGA claims. Under this standard of review, we determine only whether the trial court acted within its broad discretion in approving the settlement." (*Moniz, supra*, 72 Cal.App.5th at p. 78.) In applying this standard, we review "the trial court's findings of fact for substantial evidence and its conclusions of law de novo. [Citation.]" (*Ibid*.)

Vasquez essentially argues that the trial court could not possibly have reached the conclusion that the settlement of the suitable seating claims and the attached PAGA claims was fair, given that the court purportedly failed to adequately consider the value of the claims being extinguished, which resulted in the trial court rushing the approval of a "facially undervalued settlement."

We disagree with Vasquez's description of the record and the evidence supporting the trial court's decision to approve the settlement. This case had been litigated for many years and required two separate mediations with two different neutral mediators before the settlement was reached. Even after a settlement was reached in principle, the parties spent an additional three months engaging in confirmatory discovery to ensure that the factual record supported the terms of the settlement. During the time the case was being litigated, the trial court was overseeing the litigation and became familiar with the strengths and weaknesses of the parties' positions. Further, even though the suitable seating claim was one of the newly-raised claims added

53

to the case in the third amended complaint, which might have suggested that the claim had not been scrutinized to the same degree as the other claims initially asserted in this action, the *Hernandez* Plaintiffs presented evidence to the court demonstrating that they determined, through discovery and litigation, that SFM's seating policy, adopted as of April 29, 2013, essentially complied with Wage Order No. 7—i.e., the Wage Order that formed the basis of the suitable seating claim. Specifically, in July 2016, a Certified Professional Ergonomist conducted an ergonomic assessment based on an on-site analysis of three representative Sprouts California locations and interviews with Sprouts employees; this expert determined that the nature of the work would not reasonably permit the use of seating for Sprouts cashiers, except possibly in the dedicated express lanes and the receiving manager's position. In response to the expert's recommendations, Sprouts updated its seating policy. The *Hernandez* Plaintiffs also presented evidence that as of November 1, 2016, SFM adopted the expert's recommendation with respect to these employees, and finally that the interviews of a representative sample of hundreds of SFM employees did not result in any complaints about an inability to obtain suitable seating.

In response to the argument made to the trial court that the suitable seating claims could have been "worth millions of dollars," based on other suitable seating cases that were settled for larger amounts, the *Hernandez* Plaintiffs pointed out to the court that those unreported cases involved seating policies that, on their face, failed to comply with California law, in contrast to the seating policy in this case. Further, although the $300,000 allocated to settling the PAGA claims included claims other than just the suitable seating claims, the *Hernandez* Plaintiffs had conducted significant discovery with respect to the pay and meal break claims, as well, and had

engaged the services of an expert to conduct a review of a sample of time and pay records to provide insight into the strength of these claims. In fact, the *Hernandez* Plaintiffs had interviewed hundreds of employees, only to find that many of the employees had not suffered any of the alleged violations.

In addition, it was clear that the $300,000 allocated to settle the PAGA claims could not be considered on its own. As discussed above, the parties also agreed to settle class action claims based on many of the same alleged violations as the PAGA claims, allowing for greater recovery for the aggrieved employees than they would have received if the entire $1,200,000 had been allocated solely to settle the PAGA claims. Absent SFM's agreement to treat some portion of the claims as class claims for purposes of settling the matter, most, if not all, of the aggrieved employees would not have been entitled to any recovery for class claims because the vast majority of the affected employees had signed arbitration agreements that included a class action waiver. By allocating $900,000 to newly-added class claims, the overall structure of the settlement permitted aggrieved employees to recover more on an individual basis than those employees would have recovered if the entire settlement amount had been allocated to settling only the PAGA claims; if the entire $1.2 million had been allocated to settlement of the PAGA claims, the aggrieved employees would have been entitled to only 25 percent of the total settlement sum that was not allocated to attorney fees.

Vasquez nevertheless complains that "there was no motion or memorandum of points and authorities justifying this rock-bottom settlement amount." However, there is no requirement that a PAGA settlement be approved through a noticed motion proceeding, and the record does not support the implication that the trial court failed to give this settlement adequate consideration. Throughout this process, the parties provided the

55

court with information as to how and why they valued the claims as they did. The record does not demonstrate that the trial court abused its discretion in approving the settlement of the PAGA claims, and, as a result, Vasquez cannot demonstrate that the court erred in denying his motion to vacate the judgment on this ground.

We therefore conclude that the trial court did not err in denying Vasquez's motion to vacate, the substance of which was based on Vasquez's assertion that neither portion of settlement (i.e., the PAGA claims portion and the class claims portion) was fair, reasonable or adequate.

IV.

DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.


AARON, Acting P. J.


WE CONCUR:

IRION, J.

GUERRERO, J.

56