Filed 12/22/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ZIANI HOMEOWNERS ASSOCIATION, | |
| Plaintiff and Respondent, | G050284 |
| v. | (Super. Ct. No. 30-2012-00583548) |
| BROOKFIELD ZIANI LLC et al., | O P I N I O N |
| Defendants and Respondents; | |
| ALI FADAVI et al., | |
| Movants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Robert J. Moss, Judge. Reversed and remanded with instructions.

AlvaradoSmith, Robert J. Stein II, Claire M. Schmidt and Mayte Santacruz for Movants and Appellants.

Fenton Grant Mayfield Kaneda & Litt, Daniel H. Clifford, Joseph Kaneda and Bruce Mayfield for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

Movants and appellants Ali Fadavi, Shadi Ghazi, Pamela Bacha, Mary Roll, Jenna Pearce, Joe Pearce, Michael Ehsani, Robert Glass, and Rocheda Reid (Movants) appeal from an order denying their motion to intervene on the grounds it was not timely. Movants argue the trial court erred in determining timeliness, based upon the date the complaint was filed. We agree. Therefore, we reverse the order and remand with instructions to reconsider the timeliness of the motion, based upon the date Movants knew or should have known their interests in this litigation were not being adequately represented; and, if it is determined to be timely, then to decide the motion on the merits.

**FACTS**

Brookfield Ziani LLC (Brookfield) constructed a condominium development (Condominium Development) in Newport Coast in 2003 and 2004. In July 2012, Ziani Homeowners Association (HOA) sued Brookfield and others, alleging construction defects, including plumbing defects. Movants are owners of individual units within the Condominium Development and are HOA members.

The plumbing defect claims concerned leaks in the pipes, with some of those pipes being located in the individual owners' units and some in the common areas. The plumbing defect claims were the largest item (by cost of repair) in the lawsuit. The unit owners are responsible for the costs of plumbing repairs in their individual units, while the HOA is responsible for the costs of plumbing repairs in the common areas.

The HOA complaint was brought in the name of the HOA and asserted: "By the express terms of the governing documents and pursuant to Code of Civil Procedure section 382 and Civil Code sections 1364 and 1368.3, [HOA] is granted the general authority and responsibility to bring the herein stated action on behalf of all owners of condominium units within the Condominium Development."

The HOA complaint further asserted: "[HOA] . . . has the sole and exclusive right and duty to manage, operate, control, repair, replace and restore the Condominium Development, . . . including the right, duty, and power to contract for legal

2

services to prosecute any action affecting the [HOA] when such action is deemed by it necessary to enforce its power, rights and obligations, including the bringing of this action. . . . Plaintiff seeks recovery for damages to the property which consists of but is not limited to damages to the common areas, damages to the separate interests which the [HOA] is obligated to maintain, repair, and/or damages to the separate interests within the [HOA]'s common interest, power and standing."

From the outset, the HOA board of directors and its attorney, Mr. Kaneda, represented to the individual unit owners, including Movants, that the HOA was pursuing the plumbing defect claims and would not settle unless and until it obtained full recovery to pay for the necessary repairs to the common areas and to the individual units. The HOA board and Mr. Kaneda told the individual unit owners they could file their own lawsuits, but discouraged them from doing so, because, they promised, the HOA and its counsel were bearing the expenses of the litigation and were vigorously pursuing all of the plumbing defect claims.

Thereafter, Mr. Kaneda occasionally spoke at HOA board meetings, and kept the individual unit owners informed about the status of the litigation. At a January 21, 2014 HOA board meeting, Mr. Kaneda said the case had not settled and was scheduled to go to trial in the summer of 2014. Mr. Kaneda assured the individual unit owners he would not recommend any settlement which did not pay for all past and future plumbing defect repairs.

Between the January 21 and March 25 HOA board meetings, the HOA agreed to settle the lawsuit with Brookfield. At the March 25 HOA board meeting, the individual unit owners were informed of the existence of the settlement, but not its terms. The HOA and its counsel refused to answer questions about the settlement, including questions about the plumbing defect claims. One HOA board member resigned in protest over the settlement.

On March 31, Mr. Kaneda sent a letter to all of the individual unit owners, which provided some information about the settlement. The letter told the individual unit owners the settlement "cover[ed] all the necessary and needed repairs," and "with the settlement monies the [HOA] shall be able to completely re-plumb the entire project." However, it also stated that completing those repairs would require use of the HOA's reserve funds.

In a subsequent letter dated April 14, Mr. Kaneda said the settlement would only cover the cost of repairs made with "PEX [plastic] piping," and the decision to use PEX or copper piping (as used in the original construction) would be ultimately made by the HOA board. Mr. Kaneda also stated the settlement would not reimburse the individual unit owners who already paid to repair their plumbing defects.

At the April 22, HOA board meeting, Mr. Kaneda disclosed more terms of the settlement, which allegedly showed the settlement would leave the individual unit owners with some combination of out-of-pocket expenses for the plumbing repairs, a special HOA assessment, and depleted HOA reserves.

In May 2014, Movants filed a motion to intervene (Motion). The Motion sought both permissive intervention (Code Civ. Proc., § 387, subd. (a), all further undesignated statutory references are to this code), and mandatory intervention (§ 387, subd. (b)). The Motion was supported by declarations from Movants Fadavi and Ghazi, together with a class action complaint, and a request for judicial notice.

Movants argued mandatory intervention was proper because: (1) Movants were individual unit owners and members of the HOA, and they had a direct and immediate financial interest in the litigation; (2) the proposed settlement would impair or impede Movants' ability to protect their interests; (3) the HOA board and its counsel were no longer adequately representing Movants' interests; and (4) the Motion was timely because Movants filed it promptly after learning the HOA board and its counsel were no longer adequately representing Movants' interests.

4

Movants contended permissive intervention was proper because: (1) Movants had a direct and immediate financial interest in the litigation; (2) the Motion was timely; (3) intervention would not enlarge the issues in the case because Movants adopted the same substantive claims based on the same alleged plumbing defects; and (4) the benefit of allowing intervention outweighed the HOA's interests in controlling the litigation because the claims were the same, and denial would prejudice the individual unit owners whose claims might be barred by the statutes of limitation.

The HOA filed opposition to the Motion, supported by a declaration from Denise Hartman, the HOA board president. (Brookfield and other defendants also opposed the Motion.) With respect to mandatory intervention, the HOA conceded Movants had an interest in the property at issue in the litigation. The HOA argued, however, the proposed settlement would not impair or impede Movants' ability to protect their interests because the HOA board would ultimately decide how the settlement funds would be used and Movants had recourse under the covenants, condition, and restrictions (CC&R's) for the Condominium Development.

The HOA also asserted Movants failed to demonstrate the HOA did not adequately represent their interests. In fact, even at that late date, the HOA argued it was still adequately representing the interests of the individual unit owners. In essence, the HOA argued the Motion was too early—not too late.

As to permissive intervention, the HOA argued Movants did not have a direct and immediate interest because resolution of the litigation would not affect the relationship between the HOA and Movants vis-à-vis the CC&R's. The HOA also asserted intervention would enlarge the issues in the litigation because Movants filed a class action, which would require litigation over class certification issues. The HOA added Movants did not offer a compelling reason for intervention, and the likelihood of delay to litigate the class certification issues would prejudice the HOA.

5

Movants filed a reply, supported by a declaration from their attorney, another request for judicial notice, and evidentiary objections to Hartman's declaration. Their reply pointed out the HOA did not contend the Motion was untimely.

As to mandatory intervention, Movants noted the HOA conceded the Movants had an interest in the litigation. Movants stated they had learned the proposed settlement contained a release of their individual unit plumbing defect claims, and the proposed settlement would impair or impede their ability to protect their interests. Movants again asserted the HOA and its counsel were no longer adequately representing Movants' interests because the HOA could not pursue their individual plumbing defect claims, the proposed settlement created a conflict between the HOA and its members, the HOA misled its members, and the HOA violated its members' rights.

With respect to permissive intervention, Movants argued they had an interest in litigation, and they noted the HOA conceded Movants had such an interest in the mandatory intervention section of its opposition, but disputed they had such an interest in the permissive intervention section of its opposition. Movants contended intervention would not enlarge the issues in the litigation because there were no new claims and the reasons for intervention outweighed the HOA's objections.

The court conducted a hearing on the Motion. Among other things, the HOA's counsel argued it was authorized by statute to represent the individual unit owners' interests, the HOA did that by settling all common area and individual unit claims, the HOA would effectuate the repairs, and Movants' remedy was against the HOA. At one point the court stated, "So I guess I – should I deny their motion to intervene and maybe do so – maybe do so incorrectly, or should I let them intervene and then address the real issue on a motion for judgment on the pleadings or something like that? That's kind of what I am wondering." Movants' counsel answered by addressing each of the elements of mandatory intervention, including that "Nobody is claiming [the Motion is] untimely . . . ." The court took the matter under submission.

6

The court denied the Motion by minute order which stated: "CCP § 387 sets forth the criteria for mandatory intervention. The prospective intervener must establish two criteria: First, that the person seeking to intervene 'claims an interest relating to the property . . . which is the subject of the action . . . .' And, second, 'that person is so situated that the disposition of the action *may* as a practical matter impair or impede that person's interest . . . .' [¶] There is an exception to this rule also set forth in § 387 which states '. . . unless that person's interest is adequately represented by existing parties.' [¶] Finally, the very first three words of § 387 state 'Upon timely application . . . .' The parties agree that the prospective interveners have an interest in the property that is the subject of the action. [¶] The court finds that the disposition of the action *may* impair or impede the prospective interveners' interest— for example, if the HOA settles for too little the individual homeowners may have to pay for necessary repairs out of their own pockets. Also, whether the HOA is adequately representing the individual homeowners' interest is precisely why the motion to intervene was filed in the first place—so the court cannot at this time find that the individual homeowners are 'adequately' represented by the HOA. [¶] However, the court finds that the prospective interveners have failed to file a *timely* application. The individual homeowners knew or should have known about this litigation on or about the date the complaint was filed, 7/13/12. [¶] Instead of filing their application at that time they waited until almost two years later, when the HOA and developer had worked out a settlement, to try to intervene. [¶] To allow them to intervene at this time would be particularly unfair to the developer who committed its resources to settling the case with HOA with the understanding that the HOA had standing to do so based on CC § 5980. Now having committed to a settlement, the interveners would keep the case alive even though the developer has 'bought her peace.' Had the motion to intervene been filed at or about the time the case was filed, the developer could have taken the claims of the individual homeowners into account. For the same reason, the court exercises its authority to disallow discretionary

7

intervention. [¶] While it may be true that the prospective interveners can simply file a separate action against the developer and/or the HOA, the court will deal with that case when and if it is filed. [¶] If the HOA engaged in fraud and/or breach of fiduciary duty the homeowners are free to assert such claims. The only issue before court now is whether to allow intervention in this case, and the answer to that question is 'no.'"

## DISCUSSION

Movants contend the trial court erred as a matter of law by ruling the Motion was untimely, based on the finding that almost two years had elapsed from the date "[t]he individual homeowners knew or should have known about this litigation on or about the date the complaint was filed, 7/13/12." Movants argue the court should have determined the timeliness issue, based on the date they knew or should have known their interests in the litigation were not being adequately represented. We agree.

The parties have not directed our attention to any controlling California authority, and we have found no reported decision which identified the correct date to use as the starting point for determining the timeliness of a motion to intervene under section 387. However, we note section 387 was modeled after and is "virtually identical" to rule 24 of the Federal Rules of Civil Procedure (28 U.S.C.S.; rule 24). (*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 555 (*Hodge*).) Both provide for mandatory and permissive intervention, subject to a "timely application" requirement. (Compare § 387, subds. (a) & (b) with rule 24, subds. (a) & (b).)

Further, we recognize section 387 was adopted after rule 24, and "[w]hen the Legislature adopts the substance of a non-California statute, the Legislature is presumed to have acted with knowledge and in light of decisions interpreting the adopted statute. [Citation.]" (*Hodge*, *supra*, 130 Cal.App.4th at p. 555.) Therefore, it appears the Legislature must have intended that section 387 should be given the same meaning, force, and effect as has been given to rule 24 by the federal courts. (*Id.* at p. 556; see *Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 384.)

8

The federal court decisions are in substantial agreement. They focus "'on the date the person attempting to intervene should have been aware his interest[s] would no longer be protected adequately by the parties, rather than the date the person learned of the litigation.'" (*Chamness v. Bowen* (9th Cir. 2013) 722 F.3d 1110, 1121, quoting *Bates v. Jones* (9th Cir. 1997) 127 F.3d 870, 873; *Officers for Justice v. Civil Service Com'n* (9th Cir. 1991) 934 F.2d 1092, 1095-1096 [same]; *Cal. Dept. of Toxic Substances v. Commer. Realty* (9th Cir. 2002) 309 F.3d 1113, 1120 [intervener must act as soon as he knows or has reason to know that interests might be adversely affected by outcome of litigation]; *Legal Aid Soc. of Alameda Co. v. Dunlop* (9th Cir. 1980) 618 F.2d 48, 50 [relevant circumstance is when intervener became aware its interest would no longer be protected adequately by parties]; *Benjamin v. Department of Public Welfare of PA* (3rd Cir. 2012) 701 F.3d 938, 950 [delay measured from time intervener knows or should have known of alleged risks to rights or representative's shortcomings]; *Hill v. Western Elec. Co., Inc.* (4th Cir. 1982) 672 F.2d 381, 386 [critical issue is whether intervener moved promptly after interest no longer adequately represented]; *Sierra Club v. Espy* (5th Cir. 1994) 18 F.3d 1202, 1206 [timeliness measured by speed with which intervener acted when became aware its interests would no longer be protected by original parties]; *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.* (10th Cir. 2010) 619 F.3d 1223, 1233 [not untimely if intervener's interests adequately represented until shortly before motion to intervene]; *Reich v. ABC/York-Estes Corp.* (7th Cir. 1995) 64 F.3d 316, 321 [timeliness determined from the time interveners learn interest might be impaired—not when suit filed or even when they learned of its existence].) Likewise, *In re Discovery Zone Securities Lit.* (N.D.Ill. 1998) 181 F.R.D. 582, 594, held, in a situation analogous to the case at bar, the petitioner "moved to intervene well within a reasonable amount of time after discovering that class counsel was no longer litigating or negotiating on its behalf."

9

The HOA has not attempted to distinguish these federal cases, or directed our attention to any other cases, California or federal, which apply a different rule.

Accordingly, we conclude that in adopting section 387, the Legislature intended it to be interpreted consistently with federal cases interpreting rule 24, and the timeliness of a motion to intervene under section 387 should be determined based on the date the proposed interveners knew or should have known their interests in the litigation were not being adequately represented. (Cf. *Hodge*, *supra*, 130 Cal.App.4th at p. 556.)

Our conclusion is consistent with the plain language and purpose of section 387. For example, with regard to mandatory intervention, so long as all the other requirements are met, a court shall permit a person to intervene, "unless that person's interest is adequately represented by existing parties." (§ 387, subd. (b).) Hence, intervention is permitted only when the intervener's participation is necessary to protect his or her interests. Of course, this makes sense. Intervention is not necessary or desirable when the intervener's interests are adequately represented, as it would serve only to complicate and delay the litigation for no good reason.

In sum, the court here used the wrong date as the starting point for determining the timeliness of the Motion. The court should have used the date on which Movants knew or should have known their interests in this litigation were not being adequately represented by the HOA, not the date on which Movants knew or should have known about this litigation. This was an error of law. In addition, the court did not make any factual finding regarding the date on which Movants knew or should have known their interests in this litigation were not being adequately represented by the HOA.

For all of these reasons, we reverse the order denying the Motion, and remand the matter to the trial court, with instructions to make a factual finding regarding the date on which Movants knew or should have known their interests in this litigation were not being adequately represented by the HOA, and then to reconsider the timeliness of the Motion, using that date as the starting point for the timeliness analysis.

10

If upon reconsideration the court determines the Motion was timely, then the court shall decide whether the Motion should be granted under either or both the mandatory intervention provisions of section 387, subdivision (b), or the permissive intervention provisions of section 387, subdivision (a). The court shall make such additional findings as may be necessary, together with the court's prior findings, to address all of the requirements for both mandatory and permissive intervention. With respect to permissive intervention, the court shall consider all of the factors set out and discussed in *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342.

## DISPOSITION

The order is reversed and remanded to the trial court, with directions to make a factual finding regarding the date on which Movants knew or should have known their interests in this litigation were not being adequately represented by the HOA, and then to reconsider the timeliness of the Motion, using that date as the starting point for the timeliness analysis. If upon reconsideration the court determines the Motion was timely, then the court shall decide whether the Motion should be granted under section 387, subdivision (a), or subdivision (b), or both, all as provided above.

Movants (appellants) are awarded their costs on this appeal.


THOMPSON, J.

I CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

11

O'LEARY, P.J., concurring.

I concur in the result but write separately to address an issue I find the trial court must decide. The majority concludes, "From the outset, the HOA board of directors and its attorney, Mr. Kaneda, represented to the individual unit owners, including Movants, that the HOA was pursuing the plumbing defect claims and would not settle until it obtained full recovery to pay for the necessary repairs to the common areas and to the individual units." I do not find the facts in the record quite so clear.

As the majority points out, the unit owners are responsible for the costs of plumbing repairs in their individual units and the HOA is responsible for the costs of plumbing repairs in the common areas. Pursuant to Civil Code 5980, subdivision (b), an HOA "has standing to institute, defend, settle, or intervene in litigation, arbitration, mediation, or administrative proceedings in its own name as the real party in interest and without joining with it the members, in matters pertaining to the following: [¶] . . . [¶] (b) Damage to the common area."

Here, after completion of all statutory prelitigation requirements, the HOA filed a complaint against Brookfield seeking damages for construction defects asserting standing under then Civil Code section 1368.3 (now Civil Code section 5980). In the complaint, the HOA seeks to recover for "damages to the common areas, damages to the separate interests which the [HOA] is obligated to maintain, repair, and/or damages to the separate interests within the [HOA]'s common interest, power and standing."

This language suggests the HOA's lawsuit does not seek to recover damages suffered by homeowners in their individual units. Yet, in the proposed settlement agreement, the HOA purports to have the authority to settle claims for damages in the individual units of the owners. And Movants contend Kaneda made representations to them that their individual interests were being represented in the HOA litigation. There is no clear indication in the record if and how the HOA acquired

1

standing to represent the individual interests of the owners in addition to interests of the HOA.

The Movants presumably seek to intervene to pursue their individual interests—damage to their individual units. But it may be the Movants also seek to intervene as to the damage to the common areas as well. To resolve the motion to intervene, the trial court must initially determine what "interests" are the subject of this litigation and then determine whether the Movants seek to intervene on claims of damage to common areas as well as damage to their individual units.

O'LEARY, P. J.

2