Filed 11/17/23; Certified for Publication 12/13/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| STATE WATER BOARD CASES | C096511 |
| | (JCCP No. 5013) |

In December 2018, respondent State Water Resources Control Board (the Board) adopted amendments to the water quality control plan for the San Francisco Bay/Sacramento-San Joaquin Delta Estuary (the Bay-Delta Plan) and certified a substitute environmental document (SED) supporting the amendments. No fewer than 13 separate lawsuits were filed against the Board challenging its adoption of the amendments and the SED on various grounds. Appellant — the San Joaquin Tributaries Authority, or SJTA — filed one of those 13 lawsuits. The lawsuits were filed in six different counties. At the request of the Board, the lawsuits were coordinated in Sacramento County as *State Water Board Cases*, Judicial Council Coordination

1

Proceeding No. 5013 (hereafter the coordination proceeding), and this court was designated as the court having appellate jurisdiction.

SJTA thereafter filed a motion to intervene in all of the cases that were part of the coordination proceeding. The trial court denied the motion, SJTA appeals, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2018, the Board adopted amendments to the Bay-Delta Plan (which are hereafter referred to as the Plan Amendments) and certified the SED. Among other things, the Plan Amendments include new "flow objectives" for the lower San Joaquin River to protect fish and wildlife beneficial uses.[1] The new flow objectives are to "[m]aintain inflow conditions from the San Joaquin River watershed to the Delta at Vernalis sufficient to support and maintain the natural production of viable native San Joaquin River watershed fish populations migrating through the Delta." Numerically, the objectives are to "[m]aintain 40% of unimpaired flow, with an allowed adaptive range between 30% - 50%, inclusive, from each of the Stanislaus, Tuolumne, and Merced Rivers from February through June." "Unimpaired flow represents the natural water production of a river basin, unaltered by upstream diversions, storage, or by export or import of water to or from other watersheds."

As the Board recognized in the SED, "The use of a percent of unimpaired flow assigns an explicit percent of unimpaired flow to fish and wildlife, with the remaining percent of unimpaired flow available for other uses. . . . For example, if the flow

---

[1] The Plan Amendments also include relaxed "salinity objectives" for the southern Delta. SJTA's lawsuit originally contained one cause of action (the 26th) challenging the adoption of the salinity objectives, but that cause of action was dismissed by the trial court. Thus, although SJTA briefly mentions the salinity objectives in its opening brief, its primary challenge is to the flow objectives.

requirement is 40 percent of unimpaired flow from February through June, the remaining 60 percent is available for all other uses." Thus, under the new flow objectives, 40 percent of the unimpaired flow of the Stanislaus, Tuolumne and Merced Rivers will remain in the rivers to support and maintain native fish populations, leaving the remaining 60 percent available for other uses. The Board also recognized, "The primary effect of the flow proposal is that it would *decrease the quantity of surface water available for diversion for other uses compared to the current condition*." (Italics added.)

The Board estimated that implementation of the flow objectives will reduce surface water available for other uses by anywhere from 7 to 23 percent. It also noted that "[t]his reduction in availability of surface water could affect water users who obtain their water from . . . anywhere within the Stanislaus, Tuolumne, and Merced River Watersheds," including, in particular, the South San Joaquin Irrigation District, the Turlock Irrigation District, and the City and County of San Francisco.

SJTA is a joint powers authority comprised of, among others, the South San Joaquin Irrigation District, the Turlock Irrigation District, and the City and County of San Francisco, all of whom hold water rights on the Tuolumne or Stanislaus Rivers. They fear that implementing the flow objectives will decrease the quantity of water available for their use.

The Plan Amendments do not actually implement the flow objectives. They explain, "Most of the objectives in this ongoing plan are being, and will continue to be, implemented by assigning responsibilities to water right holders because the parameters to be controlled are primarily impacted by flows and diversions. This plan, however, is not to be construed as establishing the responsibilities of water right holders. Nor is this plan to be construed as establishing the quantities of water that any particular water right holder or group of water right holders may be required to release or forego to meet the objectives in this plan. The State Water Board will consider, in a future water rights

3

proceeding or proceedings, the nature and extent of water right holders' responsibilities to meet these objectives."

Two of the 13 cases challenging the Plan Amendments and SED have since been dismissed, leaving 11 coordinated cases. All petitioners seek a writ of mandate ordering the Board to vacate, rescind and set aside its approval and adoption of the Plan Amendments and the SED.[2] However, not all petitioners agree on *why* the Plan Amendments must be vacated. To give one example, some petitioners contend the flow objectives are too low, and more water should be allocated to fish; and some, including SJTA, contend the flow objectives are too high and less water should be allocated to fish.

In June 2021, SJTA filed a motion to intervene in all of the coordinated cases (except for its own), along with a proposed complaint in intervention that was substantively identical to its original petition and complaint.[3] SJTA argued it had a right to intervene because it had an interest relating to the transaction that is the subject of the consolidated cases, disposition of those cases could impair its ability to protect its interests, and its interests were not adequately represented by existing parties. Alternatively, SJTA argued it should be permitted to intervene because it had a direct and immediate interest in the other cases, intervention would not enlarge the issues, and its

---

[2]     In addition to SJTA, petitioners in the coordinated cases include:  California Farm Bureau Federation; Merced Irrigation District; City of Modesto; Westlands Water District; Modesto Irrigation District; North Coast Rivers Alliance et al.; Stockton East Water District; San Francisco Baykeepers et al.; the United States of America; and South Delta Water Agency et al.

[3]     Four other motions to intervene were filed:  three by existing parties to the coordinated cases (Bay Area Water Supply and Conservation Agency, Stockton East Water District, and Westlands Water District) seeking to intervene in some or all of the others; and one by a nonparty (State Water Contractors) seeking to intervene in four of the coordinated cases.  The court granted State Water Contractors' motion to intervene, but denied the other motions.  Those orders are not at issue here.

4

reasons for intervention outweighed any opposition thereto. The Board opposed the motion.[4]

The trial court denied the motion, finding SJTA had no right to intervene because it failed to show it had an interest in the Board's adoption of the Plan Amendments. The trial court also declined to give SJTA permission to intervene, finding intervention was "unnecessary and redundant" because its proposed complaint in intervention simply duplicated claims it already raised in its own petition. The denial of permissive intervention was "without prejudice," and the trial court noted SJTA could seek permissive intervention at a later date "should previously unforeseen circumstances supporting intervention become known."

SJTA filed a timely appeal challenging the trial court's order. (See *Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 547 ["An order denying a motion for leave to intervene is directly appealable because it finally and adversely determines the moving party's right to proceed in the action"].)

The trial court did one more thing that is potentially relevant to this appeal: it allowed all petitioners to brief and argue the merits of all claims and issues raised by any of the pleadings in the coordinated cases. In particular, it allowed each petitioner to file both (1) a 50-page opening brief on the merits of its petition, and (2) a 20-page brief responding to any issues addressed in the opening briefs of the other petitioners that were not pled in its petition and thus not addressed in its opening brief. For example, if San Francisco Baykeepers et al. addressed an issue in its opening brief that SJTA did not

---

[4]    North Coast Rivers Alliance et al. filed a joinder in the Board's opposition. No other party opposed the motion. Petitioners San Francisco Baykeepers et al., filed a response to the motion suggesting the trial court should allow all parties to brief all issues in the coordination proceeding, which it contended would "obviate[] the need for intervention"; otherwise, it took "no position on the requests for intervention, provided that . . . intervention does not duplicate issues already before the Court in this coordinated proceeding or expand the scope of Petitioners' case."

plead or address in its opening brief, SJTA could file a response to that issue. There was one exception. SJTA's petition asserted several California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) causes of action, but those causes of action were dismissed for failure to comply with Public Resources Code section 21167.4, subdivision (a), which provides, "In any action or proceeding alleging noncompliance with [CEQA], the petitioner shall request a hearing within 90 days from the date of filing the petition or shall be subject to dismissal on the court's own motion or on the motion of any party interested in the action or proceeding." Because SJTA's CEQA causes of action were dismissed, the trial court ruled it was not permitted to address CEQA issues either in its own opening brief, or in its brief responding to issues raised in other petitioners' opening briefs.

**DISCUSSION**

**I**

*Relevant Law*

Intervention is governed by Code of Civil Procedure section 387.[5] There are two types of intervention: mandatory intervention (sometimes called intervention as of right) and permissive intervention. (§ 387, subd. (d).) Mandatory intervention is governed by section 387, subdivision (d)(1), which provides, in relevant part, "The court shall, upon timely application,[6] permit a nonparty to intervene in the action or proceeding if . . . . [¶] . . . [¶] (B) The person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that

---

**5**      Further undesignated statutory references are to the Code of Civil Procedure.

**6**      The trial court did not find, and the Board does not contend, that SJTA's application was untimely. We thus do not discuss timeliness further.

interest, unless that person's interest is adequately represented by one or more of the existing parties." Permissive intervention is governed by section 387, subdivision (d)(2), which provides, "The court may, upon timely application, permit a nonparty to intervene in the action or proceeding if the person has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both."

"California cases are not settled on whether we review the denial of a request for mandatory intervention . . . de novo or for abuse of discretion." (*Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 732 (*Edwards*).) Because section 387's provision regarding mandatory intervention "is in substance an exact counterpart" to rule 24(a) of the Federal Rules of Civil Procedure, we may look to federal cases interpreting rule 24 when interpreting section 387. (*Hodge v. Kirkpatrick Development, Inc., supra*, 130 Cal.App.4th at p. 556.) "Federal courts review de novo the denial of a motion for mandatory intervention under Federal Rules of Civil Procedure rule 24," which suggests we should as well. (*Edwards, supra*, at p. 732.) Ultimately, however, "[w]e need not decide which standard is correct under state law because we find no error in denying mandatory intervention under any standard." (*Id.* at p. 733.)

Whether to allow permissive intervention in a particular case " 'is best determined by a consideration of the facts of that case' [citation], and the decision is ordinarily left to the sound discretion of the trial court." (*Fireman's Fund Ins. Co. v. Gerlach* (1976) 56 Cal.App.3d. 299, 302.) "We therefore review an order denying leave to [permissively] intervene under the abuse of discretion standard." (*City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030, 1036; see also *Edwards, supra*, 29 Cal.App.5th at p. 736 ["We review the denial of permissive intervention for abuse of discretion"]; *Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1428 ["The standard of review for an order denying leave to intervene [permissively] is abuse of discretion"].) Despite this clear authority, SJTA argues we should review the trial court's denial of permissive intervention de novo,

because the trial court misapplied the law. As we explain below, we find the trial court did not misapply the law. We thus apply the abuse of discretion standard when reviewing the trial court's order denying permissive intervention. "Under this standard of review, a reviewing court should not disturb the trial court's exercise of discretion unless it has resulted in a miscarriage of justice." (*City and County of San Francisco, supra*, at p. 1036.)

With this in mind, we turn to whether the trial court erred when it denied SJTA's motion for mandatory intervention and for permissive intervention, and we conclude the answer is no.

## II

### *Mandatory Intervention*

In order to establish a right to mandatory intervention, SJTA must meet three requirements: (1) it must have "an interest relating to the property or transaction that is the subject of the action"; (2) it must be "so situated that the disposition of the action may impair or impede [its] ability to protect that interest"; *and* (3) its interest must not be "adequately represented by one or more of the existing parties." (§ 387, subd. (d)(1)(B); see also *Edwards, supra*, 29 Cal.App.5th at p. 732.) The trial court denied SJTA's motion based solely on the first requirement and did not discuss the other two. In analyzing that requirement, the trial court found the transaction that is the subject of the consolidated proceeding is the Board's adoption of the flow and salinity objectives (or, perhaps more accurately, its adoption of the Plan Amendments).[7] As relevant here, the trial court also found SJTA did not show the requisite interest relating to this transaction because adopting the Plan Amendments did not determine any particular entity's water

---

[7] SJTA argues the trial court viewed the transaction too narrowly, but we need not decide whether it is correct.

8

rights.

SJTA argues it has an interest in the adoption of the Plan Amendments (as evidenced, in part, by the fact that it has standing to challenge those amendments in its own petition), and the trial court erred in finding otherwise. SJTA also argues it meets the other two requirements for mandatory intervention as well, and we should hold it is entitled to intervene as of right. The Board agrees with the trial court's finding that SJTA did not show the requisite interest in the adoption of the Plan Amendments. Alternatively, the Board argues we should affirm the trial court's ruling because SJTA did not meet the other two requirements. We agree that SJTA did not meet the other two requirements, and thus need not decide whether SJTA has the type of interest in the adoption of the Plan Amendments that would support mandatory intervention.

We begin by noting that section 387 allows a "*nonparty*" to intervene in an "*action or proceeding*" if certain requirements are met. (§ 387, subd. (d)(1), (2), italics added; see also *Carlsbad Police Officers Assn. v. City of Carlsbad* (2020) 49 Cal.App.5th 135, 147 (*Carlsbad Police Officers Assn.*) [" 'An intervention takes place when a nonparty, deemed an intervenor, becomes a party to an action or proceeding between other persons' "]; Cal. Civil Procedure Before Trial (Cont.Ed.Bar 4th ed. 2023) § 43.15 ["Intervention is intended to protect the rights of nonparties . . . . It may be invoked only by a nonparty, not by existing parties or the court"].) The rub here is that SJTA, while technically a nonparty as to each of the coordinated cases except its own, *is itself a party to the coordination proceeding* in which those cases are now being litigated. (See, e.g., *Prescription Opioid Cases* (2020) 57 Cal.App.5th 1039, 1048 ["a coordination proceeding includes multiple coordinated actions"].) If we view the coordination proceeding as a whole, rather than focusing solely on the separate actions that are part of that proceeding, SJTA is not entitled to intervene either as of right or permissively because it is not a nonparty. Similarly, if we view SJTA as a party to the coordination proceeding, there is no need for it to intervene in each of the cases that are part of that

9

proceeding. The purpose of intervention is " 'to obviate delay and multiplicity of actions by creating an opportunity to those directly interested in the subject matter to join in an action already instituted.' " (*Marc Bellaire, Inc. v. Fleischman* (1960) 185 Cal.App.2d 591, 595; see also *Carlsbad Police Officers Assn., supra*, 49 Cal.App.5th at p. 152 ["the intervener of right has 'an interest at stake which the other parties will not fully protect, and which the intervenor can fully protect only by joining the litigation' "].) SJTA is already part of, and a party to, the coordination proceeding that will determine all challenges to the Board's adoption of the Plan Amendments, and it thus does not need to join in that proceeding in order to protect its interests.

Even if we do not decide this appeal based solely on SJTA's status as a party, we find mandatory intervention is not appropriate because that status means SJTA cannot meet the second and third requirements of mandatory intervention — namely, that it is "so situated that the disposition of the action may impair or impede [its] ability to protect that interest," and its interest cannot be "adequately represented by one or more of the existing parties." (§ 387, subd. (d)(1)(B).) Although we are aware of no California cases discussing whether a party to a coordination proceeding may intervene in some or all of the coordinated cases, several federal cases have denied mandatory intervention in similar circumstances, and we look to these cases as persuasive authority. (*Carlsbad Police Officers Assn., supra*, 49 Cal.App.5th at p. 151 ["section 387 is modeled in part after rule 24 of the Federal Rules of Civil Procedure," and "[i]t follows that the Legislature must have intended that the two mandatory intervention statutes should have the same meaning, and we may look to authorities construing the parallel federal rule for guidance"].)

In *McDonnel Group, LLC v. Starr Surplus Lines Ins. Co.* (E.D.La. 2019) 2019 U.S.Dist. LEXIS 51578, for example, two separate actions were filed against the same group of insurers, and the plaintiff (Mechanical) in one of those actions filed a motion to intervene in the other. The claims in Mechanical's complaint in intervention were

10

identical to the claims in its own complaint. The district court consolidated the two actions with one other, and then denied the motion to intervene, explaining, "I find that Mechanical has a direct, substantial, legally protectable interest in the proceedings. However, now that Mechanical's separately filed lawsuit has been consolidated with the related matters, intervention is no longer necessary to protect that interest and would merely be redundant and duplicative. As a consolidated plaintiff in this matter, Mechanical will suffer no impairment or impediment to its ability to protect and represent its interests, especially because Mechanical's complaint in these consolidated matters includes the same allegations it[] seeks to bring in its complaint of intervention. For these reasons, I find that Mechanical is not entitled to intervene as of right." (*Id*. at pp. \*5-6; see *id.* at pp. \*2-\*3.)

*Vistar Techs. Corp. v. Tavory* (S.D.Fla. 2010) 2010 U.S.Dist. LEXIS 165908 is similar. There, Vistar, a corporation, sued its former president in 2006, and in 2009 the former president sued two Vistar executives. Vistar moved to consolidate the two actions, and to intervene in the 2009 action. The trial court consolidated the two actions because it found they "[u]ndoubtedly . . . involve common issues of law and fact," but it denied the motion to intervene, reasoning, "While Vistar is clearly permitted to intervene in this action under Federal Rule of Civil Procedure 24(a), Vistar no longer needs to intervene in the 2009 . . . action because that action has been consolidated with the 2006 . . . action, to which Vistar is already a party plaintiff. Accordingly, the motion to intervene is moot." (*Id*. at p. \*8; see *id.* at pp. \*3-\*5.)

Finally in *Schneider v. U.S.* (D.Neb. 2000) 197 F.R.D. 397, a magistrate judge recommended that four cases be consolidated, and also that the plaintiff in one case (*Schneider v. U.S.*) be allowed to intervene in two of the other cases (*Seger v. U.S.* and *Gray v. U.S.*). Nobody objected to the magistrate judge's recommendation on consolidation, but Seger and Gray objected to the magistrate judge's recommendation on intervention. The district court found "Schneider should not be allowed to intervene into

11

the *Seger* and *Gray* cases as a plaintiff," and it denied the motion accordingly. (*Id*. at p. 402.) It explained, "Rule 24(a) provides that a party may intervene if the party has an interest in the litigation that is not adequately protected by the existing parties. [Citation.] However, where consolidation has already been ordered, common questions of fact and law do not require intervention. [Citation.] The reason for consolidation as opposed to intervention, despite a liberal construction of the intervention requirements, is that a party whose action is nearly identical to the action with which it has been consolidated cannot satisfy the requirement that his/her interests are not adequately protected." (*Id*. at pp. 402-403.) "He has every opportunity to vindicate his rights without intervention. In addition, intervention would result in duplicative actions essentially initiated by the same individual." (*Id*. at p. 403.)

We find these cases persuasive. What they demonstrate is that when multiple cases have been coordinated or consolidated,[8] a party to one of those cases cannot meet the requirements for mandatory intervention into the other cases, either because it is not "so situated that the disposition of the action may impair or impede [its] ability to protect [its] interest," or because it is one of the "existing parties" and thus can "adequately represent[]" its own interest, or both. (§ 387, subd. (d)(1)(B); see also *McDonnel Group, LLC v. Starr Surplus Lines Ins. Co., supra*, 2019 U.S.Dist. LEXIS at p. *5 ["As a consolidated plaintiff in this matter, Mechanical will suffer no impairment or impediment to its ability to protect and represent its interests, especially because Mechanical's

---

[8] Coordination and consolidation are similar. Coordination is governed by section 404, and is allowed if the actions share "a common question of fact or law." (§ 404.) Although there is no direct analog to coordination in the Federal Rules of Civil Procedure (see *Mussat v. IQVIA, Inc.* (7th Cir. 2020) 953 F.3d 441), it is similar to consolidation under rule 42(a) of the Federal Rule of Civil Procedure (28 U.S.C.), which is only allowed if actions share "a common question of law or fact," and pursuant to which the consolidated cases retain their independent character and do not merge into one case. (See *Hall v. Hall* (2018) 584 U.S. ___, ___ [138 S.Ct. 1118, 1125].)

12

complaint in these consolidated matters includes the same allegations it[] seeks to bring in its complaint of intervention"]; *Schneider v. U.S., supra*, 197 F.R.D. at pp. 402-403 [where cases have been consolidated, party seeking to intervene in other cases "cannot satisfy the requirement that his/her interests are not adequately protected" by existing parties].)

SJTA contends it is so situated that the disposition of one or more of the individual consolidated cases may impair or impede its ability to protect its interests because of the risk that parties to those cases could settle with the Board on terms that would somehow be adverse to SJTA's interests. We are not persuaded, for two reasons. First, the one case that SJTA cites to support its argument that the risk of an adverse settlement is sufficient to support mandatory intervention — *Ziani Homeowners Assn. v. Brookfield Ziani LLC* (2015) 243 Cal.App.4th 274 — is inapplicable because the only issue in that case was whether a motion to intervene was timely. In *Ziani*, a homeowners association (HOA) that managed a condominium development sued the builder for construction defects in both the common areas and the individual units. (*Id*. at p. 276.) The HOA's board of directors and its attorney told the individual unit owners they would not settle the case unless they obtained sufficient recovery to pay for repairs to both the common areas and the individual units. (*Id*. at pp. 276-277.) The HOA ultimately agreed to settle the lawsuit on terms that some of the owners claimed would leave them with out-of-pocket expenses for repairs to their individual units, a special HOA assessment, and depleted HOA reserves. These owners thus filed a motion to intervene in the lawsuit. They argued they had a right to intervene because they had a direct financial interest in the litigation, the proposed settlement would impair their ability to protect their interest, and the HOA was no longer adequately representing their interest. (*Id*. at pp. 277-278.) The parties agreed that the owners had an interest in the property that was the subject of the action, and that the first requirement for mandatory intervention was thus met, and the trial court found the third requirement was met as well because the HOA was not

13

adequately representing the owners' interests. (*Id.* at pp. 279-280.) As relevant to SJTA's argument, the trial court also found " 'that the disposition of the action *may* impair or impede the prospective interveners' interest — for example, if the HOA settled for too little the individual homeowners may have to pay for necessary repairs out of their own pockets.' " (*Id*. at p. 280.) Ultimately, however, the trial court denied the motion to intervene on the ground that it was untimely, and the *sole* issue on appeal was whether the trial court erred in determining timeliness. (*Id*. at pp. 275-276, 280.) The appellate court held the trial court used the wrong date as the starting point for determining timeliness,[9] and it remanded the case to the trial court to reconsider whether the motion was timely, and, if so, to decide whether the motion should be granted. (*Ziani*, at p. 282.) *Ziani* thus did not consider whether the possibility of an adverse settlement is sufficient to demonstrate a would-be intervener "is so situated that the disposition of the action may impair or impede [its] ability to protect [its] interest" (§ 387, subd. (d)(1)(B)), and it is axiomatic that " 'cases are not authority for propositions not considered.' " (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 198.)

Second, SJTA gives us no concrete examples of how the Board could settle with parties to the other cases on terms that would impair SJTA's ability to protect its interests. SJTA theorizes the Board could settle a case by agreeing to make changes to the Bay-Delta Plan or the Plan Amendments that might be satisfactory or beneficial to a settling party, but adverse to SJTA. As the trial court found, however, the Board cannot make changes to the Bay-Delta Plan or amendments thereto by settlement agreement. Instead, the Board "is obligated to make any changes to the Plan Amendments pursuant

---

[9]     The issue was whether timeliness should be determined based on the date the complaint was filed, or the date the owners knew or should have known their interests were not being adequately represented. The trial court used the former, and the appellate court ruled it should have used the latter. (*Ziani Homeowners Assn. v. Brookfield Ziani LLC, supra*, 243 Cal.App.4th at pp. 280-282.)

14

to public processes prescribed in provisions of the Porter-Cologne Act." SJTA does not dispute that the Board can only make changes to the Bay-Delta Plan through a public process, but it contends this fact is "irrelevant." We disagree. Assume, for example, that the Board were to settle with San Francisco Baykeepers et al. by agreeing to revise or reconsider the flow objectives based on new scientific studies showing further declines in salmon populations. In that case, SJTA would be entitled to fully participate in the public process by which the Board reconsidered the flow objectives, up to and including litigation challenging any new objectives, and could thus fully protect its interests. Moreover, SJTA fails to explain how intervening in the other cases would actually allow it to protect itself against the risk of an adverse settlement. After all, even if SJTA intervened in the other cases, the petitioners in those other cases could still settle their claims against the Board, and SJTA would be left litigating its complaint in intervention, which, as noted, is identical to its own petition.

As for SJTA's argument that its interest is not adequately represented by one or more of the existing parties, we disagree. SJTA is a party to the coordination proceeding, and we presume it is fully capable of adequately representing its own interest, particularly where, as here, it was allowed to respond to issues raised by other petitioners in their opening briefs.

We thus find the trial court did not err in denying SJTA's request for mandatory intervention.

### III

#### *Permissive Intervention*

SJTA next contends the trial court erred in denying its request for permissive intervention. Again, we disagree.

Section 387, subdivision (d)(2), provides, "The court *may*, upon timely application, permit a nonparty to intervene in the action or proceeding if the person has

15

an interest in the matter in litigation, or in the success of either of the parties, or an interest against both." (Italics added.) Case law adds the following gloss: "[T]he trial court has *discretion* to permit a nonparty to intervene where the following factors are met: (1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action." (*Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386, italics added.) In analyzing SJTA's request for permissive intervention, the trial court noted SJTA "may" be able to meet all four factors, but it nonetheless denied the request because it found intervention would be duplicative, unnecessary, and redundant because SJTA's complaint in intervention was identical to its own petition. In other words, SJTA's own petition was sufficient to protect its interests, and it did not need to file that same petition in each of the consolidated cases.

SJTA argues that "whether intervention would be unnecessary, duplicative, or redundant . . . is irrelevant and cannot form the basis of a denial of intervention as it did here," and the trial court thus committed legal error by denying its motion on an impermissible basis. We disagree. Case law teaches that courts may consider whether intervention would be unnecessary, duplicative, or redundant when denying a motion to permissively intervene. In *South Coast Air Quality Management Dist. v. City of Los Angeles* (2021) 71 Cal.App.5th 314, 321 (*South Coast Air Quality Management Dist.*), for example, the court affirmed an order denying a motion for permissive intervention where the would-be intervener's "participation would be largely cumulative and would unduly complicate an already complicated case." Similarly, *McDonnel Group, LLC v. Starr Surplus Lines Ins. Co., supra*, 2019 U.S. Dist. LEXIS 51578, the court denied permissive intervention because "permissive intervention is unnecessary, redundant and duplicative." (*Id.* at p. *6.) That is precisely why the trial court denied SJTA's motion for permissive intervention, and we find it committed no legal error in doing so.

16

SJTA cites *King v. Pacific Gas & Electric Co*. (2022) 82 Cal.App.5th 440, 456, for the proposition that "[i]ntervention cannot be denied solely on the basis that [the would-be intervener] might be able to protect [its] interests in separate litigation," and it suggests the trial court denied its motion for a similar, and impermissible, reason. *King* is inapplicable, however, because it dealt solely with mandatory intervention.[10] (*King*, at p. 448.) As indicated above, the Legislature has specified four requirements for mandatory intervention (i.e., a timely application, an interest in the transaction that is the subject of the action, the nonparty is so situated that the disposition of the action may impair or impede its ability to protect that interest, and no existing party adequately represents the nonparty's interest). (§ 387, subd. (d)(1).) A nonparty who meets those four requirements has a right to intervene, and it necessarily follows that trial courts cannot create additional requirements. (*King*, at p. 449.)

Here, however, we are dealing with permissive intervention, not mandatory intervention. SJTA suggests that a trial court faced with a motion for permissive intervention may only consider the four factors noted above, and it may not consider any other factors. It cites no authority to support its argument, and we are aware of none. Section 387 gives the trial court *discretion* to permit intervention in certain circumstances. (§ 387, subd. (d)(2) [court "may" permit intervention if a person "has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both"]; *Reliance Ins. Co. v. Superior Court, supra*, 84 Cal.App.4th at p. 386 [court "has discretion to permit" intervention if four factors are met].) Discretion is just that — discretionary. That means that even if the trial court determines a would-be intervener has an interest in the matter in litigation, intervention will not enlarge the

---

[10] The other case SJTA cites — *Carlsbad Police Officers Assn.* — also dealt with mandatory intervention. (*Carlsbad Police Officers Assn., supra*, 49 Cal.App.5th at p. 149 ["We agree that the . . . interveners qualified for intervention of right"].)

17

issues, and the reasons for intervention outweigh any opposition thereto by the parties, it still has discretion to deny intervention. If this were not the rule, then permissive intervention would essentially become another type of mandatory intervention.

Once a trial court exercises its discretion and denies permissive intervention, we review that decision under the deferential abuse of discretion standard of review. (*City and County of San Francisco v. State of California, supra*, 128 Cal.App.4th at p. 1036.) " 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Id*. at p. 1037.) SJTA fails to convince us that the trial court's decision to deny permissive intervention exceeded the bounds of reason or resulted in a miscarriage of justice.

We end with a closer look at a case we find helpful to our analysis: *South Coast Air Quality Management Dist., supra*, 71 Cal.App.5th 314. In that case, a labor union moved to intervene in an environmental lawsuit filed by the South Coast Air Quality Management District (the Air District) to challenge the City of Los Angeles's decision to permit the China Shipping Container Terminal (the Terminal) to operate in the Port of Los Angeles. (*Id*. at p. 316.) The Air District argued the city failed to comply with CEQA when it approved the Terminal project because (among other things) the Terminal's emissions would have significant adverse impacts on air quality and the city failed to impose or enforce sufficient measures to mitigate those impacts. The Air District sought to set aside the city's approvals and to disallow the continued operation of the Terminal. (*Id*. at p. 318.) The Terminal handled a significant percentage of the port's cargo, and the labor union moved to intervene in the action because it claimed a large number of its members stood to lose their jobs if the Air District prevailed in its lawsuit, which would result in indefinite closure of the Terminal. (*Ibid*.) The trial court denied

18

the motion, ruling the union had no interest in the CEQA issues raised in the lawsuit and was only interested in the potential loss of jobs if the Terminal was closed, and allowing intervention would complicate the litigation. The union appealed, and the appellate court affirmed. (*Id*. at p. 319.) We quote its reasoning at length because we find it is equally applicable here:

"The trial court denied the Union a seat at a table. Seating at that table already was crowded. The court's exercise of its discretion was proper. [¶] . . . [¶] Much of the briefing focuses on the second factor of the permissive intervention test — that is, whether the Union's interest suffices. [¶] We affirm based on the fourth factor: the trial court reasonably concluded the Air District's interest in litigating the case without Union involvement outweighed the Union's reasons for intervening. Even if the interest is direct, denying permissive intervention in such circumstances is proper. [Citation.] [¶] This consolidated environmental case is complex. It has an impressively large cast of characters. The trial court aptly noted this case 'already has a lot of lawyers in it.' With the addition of the Attorney General and the [State Air Resources] Board,[11] we count eight petitioners, four respondents, and four real parties in interest. [¶] The Union admits its position on the merits is duplicative: it supports the City Entities, seeks to defend their actions concerning the Terminal . . . . [¶] The City Entities want the same thing. [¶] . . . [¶] There is no claim the City Entities lack motivation to defend their approval of the Terminal project and its continued operation. . . . [¶] It thus was reasonable for the trial court to conclude that Union participation would be largely cumulative and would

---

**11** The Attorney General was allowed to intervene in the case because it had a statutory right to do so, and the trial court allowed the Board to intervene because it had primary statutory jurisdiction to regulate air pollution emissions from mobile sources like the Terminal. (*South Coast Air Quality Management District, supra*, 71 Cal.App.5th at p. 319.)

unduly complicate an already complicated case." (*South Coast Air Quality Management District, supra*, 71 Cal.App.5th at pp. 319-321.)

Although the facts are different, we find much of the court's reasoning is equally applicable here. The table in this case here is even more crowded than it was in *South Coast Air Quality Management District*. If we have counted correctly, there are around 20 petitioners, two interveners, one respondent, and a plethora of lawyers (the service list has over 55 names on it). Even more importantly, SJTA has not been denied a seat at the table. It has a seat at the table in the coordination proceeding, and it effectively seeks 10 *additional* seats in order to assert and litigate *the same* claims in each of the coordinated cases. As in *South Coast Air Quality Management District*, we find it was entirely reasonable for the trial court to conclude that granting SJTA's motion to intervene would be largely duplicative and would unduly complicate an already complicated case.

## DISPOSITION

The trial court's order denying SJTA's motion to intervene is affirmed. The Board shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
EARL, P. J.



We concur:



/s/
ROBIE, J.



/s/
MESIWALA, J.

20

Filed 12/13/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| STATE WATER BOARD CASES | C096511 |
| | (JCCP No. 5013) |
| | ORDER CERTIFYING OPINION FOR PUBLICATION |

APPEAL from a judgment of the Superior Court of Sacramento County, Stacy E. Boulware Eurie, Judge. Affirmed.

Paris Kincaid Wasiewski, William C. Paris III, Valerie C. Kincaid, Timothy J. Wasiewski and Jonathan R. Marz for Movant and Appellant.

Rob Bonta, Attorney General, Annadel A. Almendras, Michael P. Cayaban, Lindsay N. Walter, Mark W. Poole, Tamara T. Zakim and Dylan K. Johnson, Deputy Attorneys General, for Defendant and Respondent.

1

THE COURT:

This opinion in the above-entitled matter filed November 17, 2023, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


_____/s/_____
EARL, P. J.


_____/s/_____
ROBIE, J.


_____/s/_____
MESIWALA, J.